Appellants/Plaintiffs James D. Stacey and Virginia King initiated this cause, individually and as executors of the estate of their mother, Grace Morrison Saunders, against their stepfather, Harris Saunders, alleging: 1) fraudulent misrepresentation by Saunders of his net worth prior to execution of an ante-nuptial agreement with Mrs. Saunders; 2) breach of that same ante-nuptial agreement; 3) that Plaintiffs were third-party beneficiaries of the ante-nuptial agreement between Mr. and Mrs. Saunders; and 4) that Mr. Saunders breached an oral agreement with Mrs. Saunders to make irrevocable a trust instrument created pursuant to terms contained in the ante-nuptial agreement.
Mr. Saunders filed a motion to dismiss that portion of Plaintiffs' complaint alleging fraud.[1] The crux of the motion to dismiss was that the fraud claim did not survive the death of the decedent, Grace Saunders. This motion was granted. He then filed a motion for partial summary judgment as to the remaining aspects of Count I of Plaintiffs' complaint. Mr. Saunders asserted that he was entitled to partial summary judgment on the basis of the clear and unambiguous language of the ante-nuptial agreement and the trust instrument subsequently executed by him.
Mr. Saunders also alleged that his revocation of the trust, subsequent to Mrs. Saunders's death, was entirely consistent with the anti-nuptial agreement, which, according to Mr. Saunders, provided that Mrs. Saunders would become entitled to the trust proceeds only if she should survive Mr. Saunders. Mr. Saunders contended that Plaintiffs' allegation that he had entered into an oral agreement with Mrs. Saunders to make the trust irrevocable, violated the statute of frauds and the parol evidence rule. Additionally, he maintained that Plaintiffs were not third-party beneficiaries under the ante-nuptial agreement because the agreement was intended, at most, for their "incidental," and not for their "direct," benefit.
From the trial court's order granting the motion for partial summary judgment (subsequently made final), Plaintiffs appeal. We affirm.
 FACTS
Grace Morrison, mother of Plaintiffs James D. Stacey and Virginia King, executed an ante-nuptial agreement on May 25, 1973, with her then husband-to-be, Harris Saunders.[2] The ante-nuptial agreement *Page 1232 
recognized that property owned by Mr. Saunders was worth approximately, $1,300, 000.
Pursuant to terms of the ante-nuptial agreement, set forth below, Mr. Saunders agreed to establish an inter vivos trust, with a corpus of $350,000 current value:
 "A. In the event of the marriage of the parties hereto, Mr. Saunders agrees that he will cause to be created an inter vivos trust with a corpus of $350,000 current value; such trust will be drawn in such a manner as to enable the trust to qualify for the `marital deduction' in his estate and will result in no present gift taxes. It will give, after his death, all of the income of such trust as defined by the federal estate tax statutes, to Mrs. Morrison for her lifetime and will further give to her a power to appoint by will to her estate, or to such persons as she may elect, the entire corpus and any undistributed income of the trust." (Emphasis added.)
In return for Mr. Saunders's agreeing to set up the inter vivos trust, Grace Morrison Saunders agreed to make no claim to any portion of his estate as his surviving wife, other than that provided in the ante-nuptial agreement contract. Additionally, she specifically waived any dower, homestead, widow's election, widow's award, or other statutory or equitable right to property owned or thereafter acquired by Mr. Saunders.
Grace Morrison and Harris Saunders were married shortly after execution of the ante-nuptial agreement. On June 20, in accordance with the ante-nuptial agreement, Mr. Saunders executed an Indenture and Declaration of Trust with Harris Saunders, Jr., John R. Saunders, and Plaintiff James D. Stacey, as trustees.
The following articles of the instrument of trust are significant for our consideration:
Article One provided that the income therefrom would be paid to Harris Saunders.
Article Five provided that, in the event Mrs. Saunders survived Mr. Saunders, she would receive the income of the trust during her life and be given a general testamentary power of appointment.
Article Six provided that, effective at the death of the survivor of Harris Saunders and Grace Saunders, the trustees would be possessed of the then trust principal of the trust estate, and should thereafter apportion it with 60% to James D. Stacey and 40% to Virginia M. King.
Article Nine reserved the right in the grantor, Harris Saunders, to amend, modify, or revoke the trust in whole or in part, by delivering such an instrument in writing to the trustees. Simultaneously with the execution of the trust, Mr. Saunders delivered a number of promissory notes with principal amounts totaling $350,000 to the trustees in fulfillment of his obligations under the ante-nuptial agreement.
Grace Morrison Saunders died of a heart attack on June 27, 1981. On July 6, 1981, Harris Saunders revoked the Indenture and Declarations of Trust in the manner specified in the trust agreement.
 PLAINTIFFS AS THIRD-PARTY BENEFICIARIES
In this State, one must establish that a contract was intended for his direct, as opposed to incidental, benefit, in order to qualify as a third-party beneficiary. Holley v. St.Paul Fire and Marine Insurance Co., 396 So.2d 75 (Ala. 1981).
Paragraph 7-H of the ante-nuptial agreement reads as follows:
 "H. This Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and the heirs, executors, administrators, devisees, legatees, successors and assigns and all other successors in interest of the parties hereto."
According to Plaintiffs, the aforementioned language clearly indicates a desire that the ante-nuptial agreement inure directly to their benefit. Consequently, Plaintiff says, once it is established that one is a third-party beneficiary, that person is fully entitled to enforce the promise made for his benefit. *Page 1233 
Defendant, while conceding that Plaintiffs have standing to bring this action as executors of Grace Saunders's estate, opposes any attempt by Plaintiffs to sue individually as third-party beneficiaries, arguing that the ante-nuptial agreement was never intended to benefit them directly in their individual capacities.
Giving effect to the clear intentions of the parties, we hold that the ante-nuptial agreement inured only to the benefit of Mrs. Saunders directly. Had Mrs. Saunders survived Mr. Saunders, which, according to its unambiguous terms, she was required to do in order to receive any benefit from the ante-nuptial agreement, then any possible benefit that might have inured to Plaintiffs would have been dependent upon the discretionary exercise by Grace Saunders of her then power to appoint by will. While we cannot speculate as to what course Mrs. Saunders might have pursued, we cannot totally discount the possibility that she may have exercised her power of appointment so as to afford Plaintiffs no benefit whatsoever from the agreement.
In Logsdon v. Logsdon, 412 Ill. 19, 104 N.E.2d 622 (1952), the Illinois Supreme Court held that grown children by a previous marriage were not third-party beneficiaries to an ante-nuptial agreement entered into by their parent, despite the fact that they were specifically mentioned therein. The Court stated:
 "We are of the opinion that the children of [the deceased spouse] acquired no rights under this instrument as third-party beneficiaries. It was not entered into for their direct benefit." 104 N.E.2d at 626.
Any benefit to Plaintiffs under the ante-nuptial agreement was, if anything, merely incidental, and depended solely upon Grace Saunders's discretionary power of appointment by will. Thus, they were not third-party beneficiaries capable of enforcing unaccrued benefits under the agreement.[3]
 INTERPRETATION OF THE ANTE-NUPTIAL AGREEMENT
As both parties concede, the crucial consideration in deciding whether the trial court properly granted summary judgment is the ambiguity vel non of the ante-nuptial agreement. Plaintiffs recite numerous principles concerning the construction of ambiguous contracts. If the agreement is not ambiguous, however, its proper construction is to be determined by the court as a matter of law. Wheeler v. First Alabama Bankof Birmingham, 364 So.2d 1190, 1194 (Ala. 1978). The trial court, subject to appellate review, determines whether a contract is ambiguous; and, if it is not, the court then determines the force and effect of the terms of the contract as a matter of law. Wigington v. Hill-Soberg Co., Inc.,396 So.2d 97 (Ala. 1981). Once a court determines that no facial ambiguity is present in a contract, it cannot proceed to examine extrinsic evidence. Quick v. Campbell, 412 So.2d 264,266 (Ala. 1982).
The central issue before us, then, is whether the trial court properly found that the ante-nuptial agreement clearly and unambiguously required that Mrs. Saunders survive Mr. Saunders to become entitled to the trust proceeds. In paragraph "A" of the ante-nuptial agreement, Mr. and Mrs. Saunders agreed that Mr. Saunders would thereafter create an inter vivos trust with a corpus of $350,000 current value. The parties further provided in that paragraph that the trust was to be drawn "in such a manner as to enable the trust to qualify for the `marital deduction' in his estate and will result in no present gift taxes." The final sentence in paragraph "A," which Plaintiffs correctly call the "key" one, and which they claim to be ambiguous, describes the trust to be created pursuant to the ante-nuptial agreement as follows: *Page 1234 
 "[The trust] will give, after his death, all of the income of such trust as defined by the federal estate tax statutes, to Mrs. Morrison for her lifetime and will further give to her a power to appoint by will to her estate, or to such persons as she may elect, the entire corpus and any undistributed income of the trust." (Emphasis added.)[4]
The relevant question is not whether one sentence of a 10-page agreement is ambiguous; rather, whether the document, when considered as a whole, is ambiguous. The principle of construction, which is most often expressed in disputes over interpretation of coverage in insurance policies,[5] was reiterated in Schmidt v. Ladner Construction Co., Inc.,370 So.2d 970 (Ala. 1979). The Schmidt Court stated:
 "The test is a more practical one and is so well known as to require no citation of precedent: A written agreement is unambiguous and will be enforced (if otherwise enforceable) where the intent of the parties can be fairly and reasonably gleaned from the four corners of the document."
In paragraph One of "Recitals" to the ante-nuptial agreement, the parties remark that "[b]ecause residence in Alabama is contemplated, no effort has been made to deal with, or discuss, the laws of other states respecting the rights of a survivingspouse in and to the property of the deceased spouse."
(Emphasis added.)
Paragraph Four is a comprehensive discussion of Mrs. Saunders's rights under Alabama and federal law to participate in Mr. Saunders's estate in the absence of the ante-nuptial agreement. Again, these provisions describe rights Mrs. Saunders would have if she were to survive Mr. Saunders.
 REVOCATION OF THE TRUST
Article Nine of the indenture and declaration of trust, executed by Mr. Saunders subsequent to consummation of the ante-nuptial agreement, reads as follows:
 "The Grantor reserves the right, at any time and from time to time, by instrument in writing delivered to the Trustees during the Grantor's lifetime to amend, modify or revoke this Indenture in whole or in part."
Plaintiffs admit that Mr. Saunders revoked the trust instrument in the manner specified by Article Nine, but contend that he breached the ante-nuptial agreement when he revoked the trust.
There is no question that a settlor/grantor may retain a power to revoke a trust. Merchants National Bank of Mobile v.Cowley, 265 Ala. 125, 132, 89 So.2d 616, 622 (1956). Accordingly, the query before this Court is whether Mr. Saunders's exercise of the power to revoke the trust after his wife's death was consistent with the language and purpose expressed in the ante-nuptial agreement.
Although the ante-nuptial agreement does not contain a section expressly providing whether the trust was to be revocable or irrevocable, the terms of the agreement were, we think, entirely consistent with Mr. Saunders's retention of the power to revoke contained in the trust instrument. Paragraph A of the ante-nuptial agreement, previously quoted in its entirety, specified that the trust Mr. Saunders was to create would result in no present gift taxes. *Page 1235 
Transfers under ante-nuptial agreements are generally subject to gift tax. See Commissioner v. Wemyss, 324 U.S. 303,65 S.Ct. 652, 89 L.Ed. 958 (1945); Merrill v. Fahs, Collector ofInternal Revenue, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963
(1945). Under federal gift tax law, however, a transfer to a trust, subject to a power of revocation by the donor, is not considered a completed gift and, therefore, does not result in present gift taxes. See Burnet, Commissioner of InternalRevenue v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748
(1932).
Defendant argues that since the ante-nuptial agreement specifically named the beneficiary of the trust (Grace Saunders) and the time (at Mr. Saunders's death) and manner of enjoyment of the beneficiary's interest (life estate with general testamentary power of appointment),[6] the only remaining power over the trust that would have prevented the trust from resulting in present gift taxes was the power of revocation.
In other words, as Defendant submits, according to the terms of the agreement, the only manner in which present gift taxes could have been avoided was the inclusion of the power of revocation in the subsequently created trust instrument. Plaintiffs, on the other hand, contend that the power of revocation could have been exercisable by Mr. Saunders in conjunction with either of Mrs. Saunders's children, and this result would have required no present payment of gift taxes.
The joint exercise of a power of revocation with a party who has a potential substantial adverse financial interest in a trust does result in payment of present gift taxes. InCommissioner of Internal Revenue v. Prouty, 115 F.2d 331, 336
(1st Cir. 1940), it is stated, "A substantial chance of coming into a good thing may constitute a `substantial adverse interest,'" and "[t]he interest need not be presently vested in possession and enjoyment."
While Plaintiffs contend that such an interpretation of the ante-nuptial agreement would "only be recognized by a tax expert," Section 5 of the agreement specifically afforded Mrs. Saunders an opportunity to consult "any attorney whom she might select." Because of its importance, we set forth Section 5 in its entirety:
 "During the discussion of this contract between Mrs. Morrison and Mr. Saunders, Mr. Saunders informed her that she was free to consult anyone whom she wished with reference to any matter incorporated in this agreement, or the discussions between them respecting its contents, including especially her children and any attorney whom she might select. The use of technical terms may make that desirable, and not all the provisions hereof were specifically agreed on in said discussions. She has again been informed herein that she is free to consult any outside party with respect to any such matters."
Under the terms of Section 5, as written, and because we find no allegations of any coercion of Mrs. Saunders to sign the ante-nuptial agreement, we are compelled to hold that the agreement was not violated by Mr. Saunders's exercise of the right of revocation of the subsequently created trust.[7] *Page 1236 
 DISMISSAL OF PLAINTIFFS' COUNT FOR FRAUD
Plaintiffs allege in Count One of their complaint that Mr. Saunders fraudulently misrepresented his net worth and that Mrs. Saunders relied on that misrepresentation in agreeing to enter into the ante-nuptial agreement. Mr. Saunders moved to dismiss that allegation on the ground, among others, that Plaintiffs' claim did not survive the death of Mrs. Saunders. The motion was subsequently granted.
Code 1975, § 6-5-462, states:
 "In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tort-feasor."
This statute has been interpreted to provide that tort causes of action, including those for fraud, do not survive the death of the injured party when no action was pending at the time of death. In Bates v. L N Employees Credit Union, 374 So.2d 323,324 (Ala. 1979), the Court said:
 "As we read it and as the plaintiff's counsel concedes, the present action sounds in tort and no action having been filed before the death of the allegedly defrauded party, it does not survive in favor of his personal representative [citing § 6-5-462]."
Plaintiffs' reliance on National States Insurance Co. v.Jones, 393 So.2d 1361 (Ala. 1980), is misplaced. In that case, allegedly fraudulent misrepresentations were directed at the plaintiff herself, who relied thereon. To the contrary, Plaintiffs in the case before us have failed to allege that they themselves relied to their detriment on any representations Mrs. Saunders might have made. As a result, their claim for fraud was properly dismissed.
We have carefully reviewed each of the issues presented and find no reversible error.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] Plaintiffs' original complaint contained three counts. Counts II and III sought possession of certain personal property, as well as damages for alleged conversion thereof. Plaintiffs, however, orally moved on January 28, 1982, to strike Counts II and III, whereupon the trial court, having previously granted motions to dismiss and for partial summary judgment regarding Count I, rendered a final judgment in favor of Mr. Saunders.
[2] At the time the ante-nuptial agreement was executed, Mr. Saunders was 79 years old.
[3] While we have addressed the third-party beneficiary issue in the context in which it is presented and argued by the parties, any consideration of the Plaintiffs' standing as third-party beneficiaries, in reality, begs the question. It is not their lack of standing, but their failure to meet the burden of showing entitlement to benefits pursuant to the terms of the agreement that is fatal to their claim.
[4] Plaintiffs concede that, according to the quoted sentence, Mrs. Morrison was required to survive Mr. Saunders to receive the income of the trust. Plaintiffs maintain, however, that the phrase "after his death" was somehow restricted or limited to the first portion of the quoted sentence and did not have any effect on the remainder of the sentence.
[5] See, e.g., Southern Guar. Ins. Co. v. Wales, 283 Ala. 493,496, 218 So.2d 822, 825 (1969) ("In construing a policy we must avoid taking a single provision or sentence and attaching to it greater significance than is intended by the whole terms of the policy"); North River Ins. Co. v. Jackson, 278 Ala. 604, 606,179 So.2d 731, 733 (1965) ("[A]n isolated sentence of the policy should not be construed alone, but in connection with other provisions of the said policy in order to arrive at a construction reasonably calculated to accomplish the intent and purpose of the parties").
[6] The retention of a power of revocation by the donor is not the only manner in which a trust can be drawn so that the trust will result in no present gift taxes. In fact, the federal gift tax laws provide that present gift taxes may also be avoided if the donor retains a power to change beneficial interests, see R. Stephens, G. Maxfield S. Lind, Federal Estate and GiftTaxation ¶ 10.01[6] (1978), or a power to change the time or manner of enjoyment of the beneficiary's interest, see id. ¶ 10.01[7].
[7] Here, again, we address this issue (revocation) in the context in which it is presented and argued. We note, however, that, while the tax consequences may shed light on the motivation of the parties, even such clearly expressed intentions are not necessarily dispositive of the ultimate question of whether the power of revocation and its exercise as to the trust is violative of the ante-nuptial agreement. In the instant case, because Mrs. Saunders predeceased her husband, and because his revocation of the trust occurred after her death, any issue concerning violation of the ante-nuptial agreement has been mooted.