Following ore tenus proceedings, the trial court divorced the parties, with custody of their two minor children being granted to John Price McGiffert (husband). Also, the trial court acknowledged that certain personal property had been divided between the parties according to an antenuptial agreement which they executed before their marriage. Concerning certain real property, however, the trial court ruled that the marital home and approximately 6 1/2 to 7 acres on which the home was located, and 34 contiguous acres, were to be considered as joint property subject to division by the trial court. The trial court granted the husband these properties and granted the wife a lump sum property settlement of $200,000. Finally, the parties were ordered to pay their own attorney's fees. Both parties filed post-judgment motions.
Subsequently, the trial court entered another order which, among other things, awarded a Jaguar automobile to Jenney McGiffert (wife), but reaffirmed other provisions of the judgment of divorce. The wife appealed and the husband cross-appealed.
On appeal, the wife contends that the trial court erred in granting custody of their two minor children to the husband. The wife, inter alia, argues that the evidence does not support the trial court's finding that the breakdown of the parties' marriage was caused by her alleged affair, and that such a finding nevertheless would not justify the award of custody to the husband.
We first note that, when evidence is presented ore tenus, the trial court's ruling as to child custody carries a strong presumption of correctness. Wheeler v. Wheeler, 574 So.2d 832
(Ala.Civ.App. 1990).
 "Because the trial judge is in a unique position to observe and to hear the evidence, this court will not reverse on appeal unless the ruling is so unsupported by the evidence that it constitutes an abuse of discretion and, therefore, is clearly and palpably wrong.
 "Furthermore, the controlling consideration in the award of custody is the welfare and best interests of the children. In making such a determination, the trial court may take into consideration a number of factors, including the age and sex of the children, as well as each parent's ability to provide for the children's educational, emotional, material, moral, and social needs."
Id. at 832. (Citations omitted.)
A detailed recitation of the evidence presented here is unnecessary. Suffice it to say *Page 974 
that the record discloses ample evidence to support the trial court's grant of custody to the husband.
According to the testimony, the husband was 38 years old at the time of trial and owned his own construction company in Tuscaloosa. The husband has an extended family which also lives in the Tuscaloosa area, and they own a farm and camp house near town. During the parties' marriage, the husband and children spent many weekends at the farm, which allowed interaction with the husband's family. Also, the record revealed that the husband has been involved in church activities with regard to the children and himself, and that he maintained an active role in tending to the needs of the children throughout the marriage.
The wife argues, however, that the trial court's reliance on her alleged extra-marital affair was misplaced. The wife citesMurphree v. Murphree, 579 So.2d 634 (Ala.Civ.App. 1991), for the proposition that a denial of custody because of adultery must be based on a showing that the adultery had some detrimental effect on the children.
Although we agree that such is the law in Alabama, we note that the trial court did not place total reliance on the wife's affair. In its judgment of divorce, the trial court states the following:
 "While [the wife's] misconduct clearly reflects on her equity interest in this case, that alone is not necessarily sufficient to deny her custody of the children; however, her actions with Petrikin when combined with her time-consuming interest in the horse business illustrate her independent attitude and character, and it is clear to the Court that [the wife] places her adult activities as a priority and works her children in and around her adult interests. She never formed any real roots in Tuscaloosa and her actions reflect the lifestyle and attitudes she acquired during her formative years. That is not to say that she is an unfit mother, but clearly she did not do the majority of the parenting typically performed by a mother in her circumstances with the lifestyle she and the [husband] enjoyed.
 "It is clear to the Court that it is in the best interest of the children that they be placed in the custody of their father. . . ."
After reviewing the record, we cannot say that the trial court abused its discretion in granting custody of the parties' two minor children to the husband. Consequently, that part of the trial court's order is affirmed.
On cross-appeal, the husband contends that the trial court erred in its division of property and in its failure to award attorney fees since, according to him, these areas were controlled by the parties' antenuptial agreement. Specifically, the husband argues that the trial court erred in awarding the wife a joint interest in the 34 acres of land adjacent to the parties' marital estate; in awarding the wife sole interest in the Jaguar automobile; and in not awarding attorney fees to the husband pursuant to the agreement.
The record revealed that the wife was the beneficiary of a trust account, in which she participated as to the investment decisions. Also, the wife held a degree in finance from the University of Alabama's School of Commerce and Business Administration, and she obtained her real estate license during the time she and the husband were dating. The wife testified that, at the time she met the husband in 1984, her personal investments included stocks, bonds, and real estate. They then began dating and later lived together. Shortly afterwards, in 1985, they entered into a real estate transaction involving what was to become the marital estate and, approximately three months later in July 1985, executed the antenuptial agreement. The next day, the parties were married. Concerning the agreement, each party was represented by independent legal counsel and each party signed the agreement. The husband testified that, at the time of their marriage, the wife had nearly $700,000 in assets, mostly unencumbered.
In pertinent part, the parties' antenuptial agreement states the following:
 "(2) PROPERTY TO BE SEPARATELY OWNED: After the solemnization of the marriage between the parties, each of them shall separately retain all the rights *Page 975 
in his or her own property whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property free and clear from any claim that may or might be made by the other by reason of their marital relationship, and with the same effect as if no marriage had been consummated. . . .
 "(3) PROPERTY TO BE JOINTLY OWNED: The parties presently have acquired a home on approximately six and one-half (6 1/2) acres on Charley Shirley Road in Tuscaloosa County, Alabama, as tenants-in-common. . . .
". . . .
 "(5) DISCLOSURE OF PROPERTY: The parties hereby acknowledge their familiarity and acquaintance with the business and resources of the other, and each understands that the other party is a person of substantial wealth. . . .
 "(6) SUBSEQUENT DIVORCE: In the event of a divorce of the parties hereto, the parties hereby agree that each shall retain his or her separately owned property, whether now owned or hereafter acquired, and that no provisions shall be made for either party by the other, whether by means of alimony, property settlement, or otherwise, in the event of such divorce.
". . . .
 "(b) The parties agree that in the event of their divorce, neither party will seek from the other party any interest in property of the other party . . . other than as provided herein. The parties further agree that in the event of their divorce that neither will seek to have the other pay any of such party's attorney fees . . . provided, however, that in the event said divorce should involve the issue of child custody . . . the Court shall have the right to, within its discretion, award to either party the allocable portion of attorney fees . . . which are incidental to the adjudication of said issue.
 "(c) The parties agree that in the event of their divorce, that all jointly held real and personal property shall be divided equally or shall be sold and the proceeds therefrom shall be divided equally.
". . . .
 "(9) SUBSEQUENT DEBTS: Except for the obligations created hereunder, each party agrees to pay and hereby agrees to hold each other free and harmless from any and all investment debts and obligations of their private estates, incurred by him or her . . . whether prior to or subsequent to the date of this Agreement.
". . . .
"(12) MISCELLANEOUS:
". . . .
 "(b) In the event of any default by any of the parties here-to as to any duty, warranty, or undertaking owed to another party which results in legal proceedings, the party adjudged to be in default shall pay, in addition to such other sums as may be due hereunder, the legal costs of such legal proceedings, including a reasonable attorney's fee."
The record revealed that, in June 1991, the trial court conducted a hearing to determine the validity of the parties' antenuptial agreement. Near the conclusion of this proceeding, the trial court stated that "the Court's opinion is that the antenuptial agreement is perfectly valid and it does control." A few days later, the trial court issued a written order finding that the only real estate transaction subject to division as part of the parties' marital estate was the approximately 6 1/2 acres upon which the marital residence was located, and the 34 contiguous acres. As noted earlier, the trial court subsequently disposed of these properties in its judgment of divorce by granting them to the husband and by granting the wife $200,000 as a lump sum property settlement.
On appeal, neither party questions the trial court's finding that the antenuptial agreement was valid and controlling; consequently, its validity is not before us for review. The husband does question, however, the trial court's inclusion of the 34 contiguous acres in the property to be divided between the parties. We note that the trial court's judgment in a divorce case presented ore tenus is presumed correct until there is a showing that such judgment is plainly and *Page 976 
palpably wrong or unjust. Ex parte Jackson, 567 So.2d 867 (Ala. 1990).
The record revealed that the 34 acres were purchased at the same time that the marital residence and its surrounding 6 1/2 acres were purchased. The purchases occurred approximately 90 days prior to the execution of the antenuptial agreement, with the parties jointly purchasing the marital residence and its property, and with the husband's construction company purchasing the 34 acres. The wife testified that, at the time of trial, she had no doubt these were separate purchases. In fact, the antenuptial agreement listed only the residence and 6 1/2 acres as joint property of the parties, and made no mention of the 34 acres. In including the 34 acres in its settlement, however, the trial court stated that "due to the unique features of the acquisition of the [property in question] and its subsequent subdivision among the [wife] and [husband], the [husband's] construction company and the [husband's] brother, this transaction is due to be litigated as a part of the property settlement issues presented to the Court."
Testimony indicated that, at the time of the purchase of the properties in question, three separate parcels of real estate were purchased, with the price totalling $380,000. The first parcel consisted of approximately 8 acres which was purchased separately by the husband's brother for $40,000. The second parcel consisted of the 6 1/2 acres on which the marital residence was located. This parcel was purchased jointly by the parties for $160,000, with the wife paying $60,000 as a down payment and the husband agreeing to make payments on the $100,000 mortgage. The wife later paid another $13,000 toward this mortgage's principal. The third parcel consisted of 34 contiguous acres purchased for $180,000 by the husband's construction company. The entire purchase price was financed by the seller, with the husband testifying that he was obligated for the monthly payments since he owned 100% of the construction company.
The husband testified that, in 1986, he refinanced the mortgage on the marital residence and 6 1/2 acres for $215,000, with part of these proceeds being used to pay the balance on the original $100,000 mortgage. A portion of the remainder of the refinancing proceeds was used to pay off the sellers who financed the purchase of the 34 acres. The husband then purchased the 34 acres from the construction company and executed a note to the company for $57,500. The husband testified that the refinancing was done for tax purposes and that the wife knew what the husband was doing. The husband also testified that he deeded the 34 acres from the construction company to himself because the company had to be divested of speculative land (i.e., the 34 acres) in order for the company to be bonded.
The husband further testified that, in 1987, he took out an equity line of credit on the marital residence and 6 1/2 acres for $100,000, and used these proceeds to pay personal debts of the marriage. According to him, all of these transactions were done for tax purposes and the wife was aware each time of the substance of the transactions. Also, the husband stated that the wife's only contributions to these purchases were her lump-sum payments of $60,000 and $13,000, and that he made every mortgage payment either through the construction company or personally. At the time of trial, the husband's mortgage payments totalled nearly $150,000.
Based on the record, particularly the antenuptial agreement and the trial court's ruling as to its validity, we agree with the husband that the trial court erred by including the 34 contiguous acres in its property settlement. Although the 34 acres later were deeded to the husband from his construction company, they were purchased by his company at the same time as the parties' purchase of the 6 1/2 acres and marital residence; yet, the 34 acres were not included in the antenuptial agreement as joint property of the parties. We also note that the husband was, and still is, responsible for the mortgage payments on each mortgage and equity line of credit which encumbers the property. Furthermore, as pointed out in the husband's reply brief, the antenuptial agreement in Paragraph 9 requires the husband to indemnify the wife for these debts. Accordingly, we hold that the trial court's judgment, by including *Page 977 
the 34 acres in its property settlement, was plainly and palpably wrong.
Second, the husband contends that the Jaguar automobile should have been sold and the proceeds divided equally between the parties, as provided in Paragraph (6)(c) of the antenuptial agreement. We agree.
The record revealed that the parties purchased the Jaguar in 1990 by trading in a recreational vehicle and a Volvo automobile, and by paying an additional $9,000. According to the husband, the recreational vehicle was purchased jointly by the parties for use in the wife's horse showing business; and, of the $9,000 paid toward the Jaguar, he contributed approximately $7,000 and the wife contributed approximately $2,000. Therefore, we hold that the trial court erred in awarding the Jaguar automobile to the wife instead of disposing of it according to the terms of Paragraph (6)(c) of the antenuptial agreement.
Finally, the husband contends that the trial court erred in not awarding attorney fees to him based on the wife's breach of the antenuptial agreement. We agree, and refer to Paragraphs (6)(b) and (12)(b) of the agreement as quoted herein. We note, however, that the attorney fees to be awarded are those pertaining to the litigation of the property settlement issues. The antenuptial agreement provides in Paragraph (6)(b) that attorney fees for the adjudication of child custody are discretionary with the trial court; as to that issue, no attorney fees were ordered and neither party questioned that decision on appeal. Accordingly, the decision of the trial court to not award attorney fees to the husband as to the litigation of the property settlement issues is reversed.
Based on the foregoing, the trial court's decision concerning custody of the parties' two minor children is affirmed. The trial court's decisions as to the issues raised by the husband on his cross-appeal are reversed, however, and this case is remanded with instructions for the trial court to enter an order consistent with this opinion. Both parties' requests for attorney's fees on appeal are denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN, J., concurs.
ROBERTSON, P.J., dissents.