Leon Laney (the "husband") and Sarah Ann Laney (the "wife") were married in December 1998.[1] Before the marriage, the parties executed an antenuptial agreement, which both parties agree is valid and enforceable.[2] The parties separated in November 1999. *Page 645 
During the marriage, the parties jointly purchased a piece of real estate (the "Whitaker property"). Each party paid one-half of the $17,000 down payment. The remainder of the $35,000 purchase price was financed. The husband made all subsequent payments on the mortgage.
The wife owned a Pontiac automobile when the parties married. She sold the Pontiac early in the marriage. After the sale of the Pontiac, she drove automobiles provided for her use by the husband. The husband provided for the wife's use a Buick automobile, a station wagon, and a Cadillac automobile. The wife was driving the Cadillac at the time the parties separated.
After a trial, the court divorced the parties. Among other things, the court ordered the Whitaker property sold and the proceeds of sale divided equally; it also awarded the wife the Cadillac, determining that it was a gift to the wife. The husband appeals.
The parties' antenuptial agreement contains the following pertinent provisions:
 "3. . . . In the event of separation or dissolution of our marriage, we agree that:
". . . .
 "b. The net equity value of any marital property held jointly by the parties and existing at the time of separation or marital dissolution shall be equally divided between us; and
". . . .
 "11. Notwithstanding any other provision of this Agreement, but only by appropriate instrument, either of us may voluntarily transfer any of such person's separate property or his or her share of any marital property to the other, whether during lifetime or at death. Neither of us intends by the Agreement to limit or restrict in any way the right of the other to receive any such voluntary transfer, but there is no Agreement or understanding between us that either of us shall provide for the other by will or in any other manner.
". . . .
 "13. We, the parties to this Agreement, contemplate that during the marriage we may acquire property which we intend to be jointly owned by husband and wife. In order to evidence this intent we will cause the title or other document or instrument which evidences ownership of the jointly owned property to include both names and, unless the ownership is to be an equal one-half interest, we shall also designate the percentage of ownership of [the husband] and [the wife]. We will also maintain records on jointly acquired property for which there is not title or documents evidencing ownership. In recognition that it may be difficult for an administrator, executor, judge, or other individual to make a determination as to whether property acquired after the marriage was intended to be joint or separate, we agree that unless there is a written title, document, or other instrument evidencing ownership in our joint names or unless there are records available evidencing ownership in our joint names, then such property shall be conclusively presumed to be the separate property of the party named in the title, document, or on any receipt, bill of sale, or other writing which indicate for *Page 646 
whom or by whom the property was acquired."
Although the ore tenus presumption applies to the trial court's findings of fact, no such presumption adheres to the trial court's application of the law to those facts. Ex parte Agee, 669 So.2d 102, 104
(Ala. 1995). The husband's arguments are based upon the interpretation of certain provisions and terms in the parties' antenuptial agreement; such interpretations, like the interpretation of unambiguous contracts, are questions of law. See Agee, 669 So.2d at 105; Stacey v. Saunders,437 So.2d 1230, 1233 (Ala. 1983).
The husband argues that the trial court erred by awarding the wife the Cadillac, which he says, was, as evidenced by the bill of sale, owned by his business. The trial court found that the husband had made a gift of the Cadillac to the wife. In support of the trial court's judgment, the wife relies on paragraph 11 of the antenuptial agreement, which says that neither party intends to restrict the right of either party to accept voluntary transfers of property from the other. The trial court indicated that it awarded the wife the Cadillac despite the fact that it was owned by the husband's business because the husband had dealt with other items of personal property in a manner inconsistent with the antenuptial agreement. Specifically, the trial court appeared to be concerned about the sale of the wife's Pontiac through her husband's business.
The parties did allow the husband's business to finance a third-party's purchase of the Pontiac through an installment-sales contract requiring payments be made to the business. The husband had paid some, but apparently not all, of the proceeds of the sales contract for the Pontiac to the wife. In the divorce judgment, however, the trial court, enforcing the antenuptial agreement's clear mandate that each party be entitled to the proceeds of the sale of his or her own separate property, ordered that the husband pay all remaining proceeds of the sale of the Pontiac to the wife within 30 days.
After considering paragraph 11, we conclude that the wife and the trial court failed to give effect to the first sentence of that paragraph, which states that either party may voluntarily transfer property to the other "only by appropriate instrument." The documentary evidence, a bill of sale, clearly established that the car was, in fact, owned by the husband's business and not by the parties jointly or by the wife alone. The determination that the Cadillac was a gift was based upon only the wife's testimony that the husband told her that the car was to be hers. There was no evidence that the husband had, by any appropriate instrument, voluntarily transferred the Cadillac to the wife. The trial court failed to give effect to the plain language of the antenuptial agreement, and it erred by awarding the wife the Cadillac.
The husband also argues that the trial court erred in awarding the wife half of the equity in the Whitaker property upon its sale. He says that the antenuptial agreement's use of the term "net equity," in light ofAgee, 669 So.2d at 105, requires that he be given credit for all payments he made on the mortgage on the property. We disagree. Although the Agee
court did indicate that the husband in that case should be given credit for "expenditures on repairs and improvements" he made during the 10 years between the divorce and the sale of the marital residence, the court was concerned with whether a second mortgage taken out by the husband should be included in the computation of "net equity." Id. at 105. Because nearly all of the funds realized from the mortgage transaction had been used to make repairs *Page 647 
or improvements to the marital residence, the supreme court concluded that net equity should be based on the amount of equity after both mortgages were satisfied. Id. at 106.
The term "net equity" is not defined in the agreement. Generally, however, equity is "`[t]he difference between the fair market value and [the] debt in property.'" Id. at 103 (quoting Black's Law Dictionary
540(6th ed. 1990)). The parties in the present case clearly knew how to protect their property from a claim by the other. The choice to purchase the Whitaker property jointly placed that property within the purview of paragraph 3.b. upon dissolution of the marriage. Had the husband intended to protect his pro rata investment in joint property, he could have drafted the antenuptial agreement to so reflect, or, as contemplated by paragraph 13, he could have designated his percentage of ownership in the Whitaker property. He did neither. The agreement is clear that the net equity value of jointly held property should be divided equally between the parties. We see no error in that portion of the trial court's judgment ordering that the parties share equally in the profits from the sale of the Whitaker property.
The wife's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Pittman, J., concurs.
Thompson and Murdock, JJ., concur in the result.
Yates, P.J., concurs in part and dissents in part.
[1] The complaint indicates that the parties were married in December 1998. The wife testified that they married in December 1997. However, she later agreed with counsel that the parties had been married only 11 months before their separation.
[2] As a general rule, antenuptial agreements are valid and enforceable under Alabama law. Barnhill v. Barnhill, 386 So.2d 749, 751
(Ala.Civ.App. 1980). However, "[b]ecause of the confidential relationship of the two parties, such contracts are scrutinized by the courts to determine their justice and reasonableness." Allison v. Stevens,269 Ala. 288, 291, 112 So.2d 451, 453 (1959).