Jane Meredith Andrews Hinds ("the wife") appeals from a judgment terminating the obligation of Thomas Martin Hinds ("the husband") to pay her periodic alimony.
After a 21-year marriage, the parties were divorced in 1980. The judgment of divorce stated, in pertinent part:
 "1. [The husband] shall pay [the wife] the sum of Seven Hundred and No/100 Dollars ($700.00) per month as alimony until the death of the [wife] or until such time as the [wife] shall remarry, whichever occurs earlier.
". . . .
 "4. In the event the [husband's] income from regular full-time employment (provided that `income from regular full-time employment' shall not include any bonus or other extraordinary payment unless such bonus exceeds 30% of his base salary) increases from the amount which he receives as of the date of the decree of divorce in this case, the amount of periodic alimony and child support shall be increased in accordance with the following formula: On the 24th month following the entry of the decree and every 2 years thereafter the amount of such periodic alimony shall be increased by the percentage (1/2 the percentage upon [the parties' daughter's] reaching majority) by which the [husband's] income has increased in the same 24-month period (for example, if the [husband's] rate of salary at the end of the 24th month following the entry of the decree of divorce is 20% higher than his rate of salary as of the date of the decree, then the periodic alimony and child support commencing with the 25th month shall be 20% higher than the periodic alimony on the date of the decree). In the event of a decrease in income from regular full-time employment a comparable decrease shall be made in alimony and child support provided that bonuses and extraordinary payments shall be considered in determining whether a decrease has occurred. Such adjustment shall be effected without the necessity of further petition to this Court, but in the event the parties cannot agree on the amount of the adjustment then this Court shall determine the amount of the adjustment upon the petition of either party. So long as the [husband] is obligated to pay the [wife] alimony or child support pursuant to this paragraph, he shall maintain the policy of life insurance in the principal amount of $92,000 supplied by his employer (The [husband] shall act in good faith with his employer to maintain said policy) with the [wife] as beneficiary, provided that if the [wife] shall remarry, the beneficiary shall be changed to [the parties'] minor children. Upon the request of the [wife], the [husband] shall *Page 269 
provide periodic evidence of the existence of said policy."
(Emphasis added.)
After the husband retired on December 31, 2000, he discontinued his periodic-alimony payments to the wife. In February 2001, the wife filed a petition for a rule nisi, alleging that the husband was in arrears in paying alimony. The husband moved for a judgment on the pleadings, asserting that, based on the language in paragraph 4 of the divorce judgment emphasized above, his obligation to pay alimony had terminated at the time he retired because, he argued, he no longer had any "income from full-time employment." The trial court denied the husband's motion for a judgment on the pleadings, and the husband then filed a petition to modify, seeking an order terminating his alimony obligation based on a material change in circumstances. The wife filed a counterpetition to modify, seeking an increase in periodic alimony based on a material change in circumstances. Following an ore tenus proceeding, the trial court denied the wife's petition for a rule nisi and granted the husband's petition to modify by terminating the husband's alimony obligation. The trial court's judgment states: "[A]ny further payment of alimony is hereby terminated . . . in accordance with the terms of the judgment of divorce dated March 6, 1980." The court ordered each party to be responsible for his or her respective attorney fees.
The wife appeals, arguing that the trial court's interpretation of paragraph 4 of the divorce judgment is erroneous. She also maintains that the trial court's judgment cannot be upheld on the alternative basis that the husband established a material change in circumstances justifying a termination of his alimony obligation.
The parties were married in 1959, and they lived for 20 years in Greensboro, North Carolina, where the husband was in the banking business. The divorce was precipitated by the husband's accepting a position with the predecessor to Regions Bank in Mobile in 1979. The husband and the parties' minor son relocated to Mobile; the wife and the parties' minor daughter remained in North Carolina.
The wife was 62 years old at the time of the hearing. She is a college graduate with a major in English. During the marriage she did not work outside the home. After the divorce, she was employed in a variety of part-time jobs such as bank teller, receptionist, bookstore clerk, and salesperson in a antiques store; she never earned more than $8 per hour. She was last employed in 1999 as a receptionist at a museum. She testified that she left that job for health reasons. She explained that, for the 10 years preceding the hearing in this case, she had suffered from interstitial cystitis, an inflammation of the lining of the bladder that causes frequent urination and pain upon urination. She stated that the illness is a chronic one; it is treatable but not curable. The wife testified that she also suffered from cardiac arrhythmia, a spur on her rotator cuff, and varicose veins. She presented no evidence, however, to indicate that any of those conditions caused her not to be able to work.
Dr. Robert J. Evans, a board-certified urologist in Greensboro, North Carolina, testified by deposition that he had treated the wife for interstitial cystitis. He said that he had not advised the wife to stop working, and he could not say whether her illness rendered her unable to work. He stated that the illness varied greatly with the individual, that most patients had good days and bad days, and that he could not determine precisely how much the illness had affected the wife's daily life. He testified, however, that "most patients with this *Page 270 
disease find it difficult to maintain employment because of the severity of their urinary frequency as well as from the side-effects of the medications they take; particularly, the antidepressants and the antihistamines. [Those medications] tend to make it hard for them to remain oriented."
The evidence tended to show that the wife maintains an active lifestyle. She travels frequently. She and her daughter went to Europe in 1999; she and a longtime male companion visited New York, Boston, and Washington, D.C., in 2001. In North Carolina, she is involved in the Debutante Club, the Friday Club, and the Greensboro Country Club, where, she admitted, she is a regular tennis player. Her monthly expenses at the country club are $350.
Before the husband retired, the wife had been receiving $1,340 per month in periodic alimony. At the time of the hearing, she was receiving Social Security benefits in the amount of $560 a month. She testified that since the divorce she has received over $100,000 in gifts from her mother. The wife owns stock valued at $178,000. She recently sold what had been the parties' marital home for a net profit of $385,000. She now lives in a condominium she purchased for $190,000, on which there is a mortgage of $110,000. The wife acknowledged that after she filed the petition for a rule nisi in this case, she made a $10,000 gift to her daughter.
The wife is a contingent beneficiary, along with her brother, of three family trusts valued at $1.2 million, $185,000, and $85,000, respectively. The first trust was established by the wife's uncle; its primary beneficiary is the uncle's 82-year-old former law partner. The wife and her brother will share in the proceeds of that trust if they outlive the primary beneficiary. The second and third trusts were established by the wife's father; the wife's mother is the primary beneficiary and the holder of a power of appointment over the trust assets. The wife and her brother are the sole heirs of their mother's estate.[1] The wife estimated that her portion of her mother's estate was valued at $150,000.
The husband, who was 68 years old at the time of the hearing, remarried after the divorce. He has two children, ages 7 and 10, by his second wife. He testified that for 22 years (a time period that, the husband points out, is longer than the length of the marriage) he had paid periodic alimony, biennially increasing his payments according to the formula set out in the divorce judgment, without missing a payment. He estimated that, in addition to having paid child-support for the parties' daughter, he had paid $100,000 for his son's college education expenses at Emory University and his daughter's college education expenses at Hollins College. He testified that he had also paid $25,000 to $30,000 for his daughter's wedding.
When the husband first went to work for the predecessor of Regions Bank in Mobile in 1979, his annual salary was $40,000. In 2000, when he retired as the chief executive officer of Regions Bank, his annual income was $492,799. The following year his income was $370,000, none of which was derived from "regular full-time employment." Until April 2003, he served as chairman of the board of the bank. The husband owns 55,000 shares of Regions Bank stock. His residence is worth approximately $400,000 and is subject to a mortgage held by his current mother-in-law. He has a retirement account valued at over $800,000. His other assets include stocks, cash, and certificates of deposit, *Page 271 
with a total net worth of $3.5 million. The husband testified that, in the two years preceding the hearing, he had had surgery twice to repair a ruptured disk in his back. He estimated that his family's monthly living expenses were $12,000.
 I.
Paragraph 4 of the divorce judgment states: "In the event the [husband's] income from regular full-time employment . . . increases from the amount which he receives as of the date of the decree of divorce in this case, the amount of periodic alimony . . . shall be increased in accordance with [a prescribed] formula." Paragraph 4 further states: "In the event of a decrease in income from regular full-time employment a comparable decrease shall be made in alimony."
The husband argues that, because his retirement on December 31, 2000, produced a "decrease [to zero] in [his] income from regular full-time employment," his periodic-alimony obligation was terminated pursuant to the provisions of the divorce judgment. The wife argues that the decrease-in-employment-income provision of paragraph 4 of the divorce judgment does not automatically terminate the husband's periodic-alimony obligation because, she says, paragraph 1 of the divorce judgment specifies the only events — her death or remarriage — that would automatically terminate the husband's duty to pay alimony.
A judgment of divorce is to be interpreted or construed like other written instruments. Grizzell v. Grizzell, 583 So.2d 1349
(Ala.Civ.App. 1991). The meaning of the decrease-in-employment-income provision of paragraph 4 is a question of law, and the trial court's ruling on that issue does not carry a presumption of correctness. See Ex parte Agee,669 So.2d 102 (Ala. 1995); Laney v. Laney, 833 So.2d 644
(Ala.Civ.App. 2002).
 "Although the ore tenus presumption applies to the trial court's findings of fact, no such presumption adheres to the trial court's application of the law to those facts. Ex parte Agee, 669 So.2d 102, 104
(Ala. 1995). The [parties'] arguments are based upon the interpretation of certain provisions and terms in the parties' antenuptial agreement; such interpretations, like the interpretation of unambiguous contracts, are questions of law. See Agee, 669 So.2d at 105; Stacey v. Saunders, 437 So.2d 1230, 1233 (Ala. 1983)."
Laney v. Laney, 833 So.2d at 646.
We hold that the trial court's construction of paragraph 4 of the divorce judgment was erroneous. We agree with the wife that paragraph 1 states only two events — the wife's death or the wife's remarriage — that automatically terminate the husband's alimony obligation and that neither of those events has occurred in this case. Paragraph 4 simply does not contemplate a complete cessation of the husband's "income from regular full-time employment" — a result that could be caused by involuntary termination as well as by voluntary retirement. Instead, paragraph 4 contemplates the husband's continuing to earn an "income from regular full-time employment," albeit possibly a decreased amount of income. Because paragraph 4 contemplates the husband's continuing employment and, therefore, his continuing to earn some"income from regular full-time employment," it does not address the husband's separation from employment, either by way of retirement or involuntary termination. Thus, if the husband had suddenly been terminated from his job and had had no "income from regular full-time employment," paragraph 4 would not have automatically absolved him of the duty to pay periodic alimony. See Arnett v. Arnett,812 So.2d 1246 (Ala.Civ.App. 2001). Under such circumstances, the trial court would have had the authority to impute income to *Page 272 
the husband, despite the husband's unemployed status, based on, among other things, proof that the husband had income from sources other than employment or that the husband had the ability to earn an income. The "ability to earn, as opposed to actual earnings, is a proper factor to consider in deciding either an initial award of child support or periodic alimony or whether to terminate . . . the amount of the award in modification proceedings." Ebert v. Ebert, 469 So.2d 615, 618 (Ala.Civ.App. 1985); Arnett v. Arnett, supra.
Likewise, the husband's voluntary retirement did not automatically terminate his alimony obligation under paragraph 4. Instead, the trial court was required to consider the husband's retirement as one factor among several — including, but not limited to, the husband's income from sources other than employment, the husband's expenses, the wife's income, and the wife's expenses — in determining whether the husband had shown a material change in circumstances warranting a termination of his alimony obligation.
 "The obligation to pay periodic alimony may be modified when there has been a material change in the financial or economic needs of the payee spouse and the ability of the payor spouse to respond to those needs. McKenzie v. McKenzie, 568 So.2d 819
(Ala.Civ.App. 1990). The burden of proving the existence of a material change in circumstances is upon the moving party. McKenzie. A decision to modify periodic alimony lies within the discretion of the trial court and will not be set aside on appeal unless a palpable abuse of that discretion is shown."
Maddox v. Maddox, 612 So.2d 1222, 1223 (Ala.Civ.App. 1992).See also Taylor v. Taylor, 640 So.2d 971 (Ala.Civ.App. 1994), and Oyler v. Oyler, 446 So.2d 650 (Ala.Civ.App. 1984).
The husband argues that, even if that portion of the trial court's judgment terminating his alimony obligation cannot be sustained by this court based on paragraph 4 of the divorce judgment, it can be sustained on the alternative ground that the evidence of record supports a finding of a material change of circumstances. Assuming that the husband is correct in arguing that there is substantial evidence to support factual findings of the nature he advocates, the point is that the trial court didnot make those factual findings.
It may or may not be that a termination of the husband's periodic-alimony obligation could be justified based on a factual finding of a "material change of circumstances." The trial court did not make a factual finding in this regard, however, but instead expressly based its judgment on the automatic-adjustment provisions of paragraph 4 of the divorce judgment. Because we do not find the evidence in the record before us so strongly weighted on either side of the issue that this court can draw a conclusion, as a matter of law, as to whether there was a material change of circumstances warranting a termination of the husband's alimony obligation, we leave this issue of fact to be determined by the trial court on remand.[2]
 II.
The wife also argues that the trial court erred by not entering a judgment in her *Page 273 
favor for the periodic alimony that the husband failed to pay between January 2001 and the date of the hearing on the husband's petition to modify or to terminate his alimony obligation. If there is to be no change in the husband's alimony obligation, the wife would indeed be entitled to the alimony the husband failed to pay beginning in January 2001, together with any interest due on that alimony. On the other hand, if the trial court decides to modify or to terminate the husband's alimony obligation, it will have the discretion to modify or to terminate that obligation retroactive to a date not earlier than the date the husband filed his petition to modify. See Bush v. Bush, 784 So.2d 299
(Ala.Civ.App. 2000). *Page 274 
 III.
The wife argues that the trial court abused its discretion by failing to award her an attorney fee. Whether to grant an attorney fee in a proceeding to modify an alimony award is discretionary with the trial court, whose judgment will not be disturbed in the absence of a plain and palpable abuse of that discretion. Ramsey v. Ramsey, 585 So.2d 79 (Ala.Civ.App. 1991);Hayes v. Hayes, 485 So.2d 753 (Ala.Civ.App. 1986).
In deciding whether to award an attorney fee in a modification-of-alimony proceeding, the trial court should consider the following factors: (1) the respective financial conditions of the parties; (2) the results of the litigation, that is, whether the party seeking a modification or the party defending against a modification was successful; and (3) whether the conduct of one of the parties precipitated the litigation.See generally Thomas R. Malia, Annotation, Right to Attorneys'Fees in Proceeding, After Absolute Divorce, For Modification ofChild Custody or Support Order, 57 A.L.R.4th 710 (1987).
After reviewing the relevant factors, we conclude that the trial court did not abuse its discretion by failing to award the wife an attorney fee.
The judgment terminating the husband's periodic-alimony obligation is reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
The wife's request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the judges concur.
[1] The husband states in his brief to this court that the wife's mother died on December 3, 2002, three weeks before the wife submitted her brief to this court.
[2] In Alabama Alcoholic Beverage Control Board v. City ofPelham, 855 So.2d 1070 (Ala. 2003), our Supreme Court observed that an appellate court "can affirm a trial court's judgment `if it is right on any ground developed in, and supported by, the record.'" 855 So.2d at 1083 (quoting Ex parte Ramsay,829 So.2d 146, 155 (Ala. 2002)). While this is a valid principle of law, it cannot be used to make this court into a fact-finder. The role of appellate courts is limited to deciding questions of law:
 "It is the function of a trial judge sitting as factfinder to decide facts where conflicts in the evidence exist. Such was the case here. The appellate courts do not sit in judgment of the facts, and review the factfinder's determination of facts only to the extent of determining whether it is sufficiently supported by the evidence, that question being one of law."
Curtis White Constr. Co. v. Butts Billingsley Constr. Co.,473 So.2d 1040, 1041 (Ala. 1985) (emphasis added).
Not unlike the present case, in Ex parte Golden Poultry Co.,772 So.2d 1175 (Ala. 2000), this court determined that the trial court had applied an incorrect legal standard in entering a judgment in favor of a defendant. Although this court specified the correct standard that should have been applied, it did not remand the case for the trial court to apply that standard, but, rather, it implicitly determined that the plaintiff had met that standard. Thus, rather than remanding for a determination of liability, this court remanded the case to the trial court for the sole purpose of determining the amount of recovery to which the plaintiff was entitled. Our Supreme Court reversed, holding that this court's responsibility is "to determine whether the trial court's decision is supported by sufficient evidence, but [this court] is not authorized to independently weigh the evidence." 772 So.2d at 1177. See also Ex parte R.T.S.,771 So.2d 475, 477 (Ala. 2000) ("The trial court must be allowed to be the trial court; otherwise, we (appellate court judges and justices) risk going beyond the familiar surroundings of our appellate jurisdiction and into an area with which we are unfamiliar and for which we are ill-suited — factfinding.");Harris v. Pinelog Props., Inc., 474 So.2d 1113 (Ala. 1985).
In City of Pelham, the trial court denied a municipality's challenge to the distribution of net profits from the Alcoholic Beverage Control Board, basing its decision on the principle of sovereign immunity. The Supreme Court upheld the trial court's judgment, but it did so on a different ground, namely, that a 2001 legislative enactment retroactively validating the distribution of profits was constitutional. Thus, while the Supreme Court did uphold the trial court's decision on a different ground than that which was expressly stated in the trial court's opinion, that different ground was a purely legal
ground that was within the province of the appellate court to decide. City of Pelham therefore represents an application of the oft-quoted general rule that an appellate court "`will affirm the judgment appealed from if supported on any valid legal
ground.'" Smith v. Equifax Servs., Inc., 537 So.2d 463, 465
(Ala. 1988) (quoting Tucker v. Nichols, 431 So.2d 1263, 1265
(Ala. 1983)) (emphasis added).
Where, unlike the present case, a trial court states no grounds for its judgment, an appellate court can, and indeed must, affirm on any valid ground properly presented in the record, even a factual ground, provided that it is supported by substantial evidence. We do so in such circumstances, however, because of a somewhat different principle applicable to such cases:
 "It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous."
Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996) (emphasis added). See also Sterling Oil of Oklahoma, Inc. v. Pack,291 Ala. 727, 747, 287 So.2d 847, 864 (1973). No such assumption is possible, however, where the trial court removes the uncertainty as to the grounds for its decision by expressly stating those grounds, as was done in the present case.