PITTMAN, Judge.
 

 This appeal concerns the proper interpretation of an antenuptial agreement entered into by Donna Lynn Hubbard (“the wife”) and Jack L. Bentley (“the husband”) in February 1993. After reciting that the parties were contemplating marriage, that they each had “separate and distinct” real and personal property, and that they desired “to eliminate mutual hostility in the event the possibility of divorce bec[ame] an unpleasant reality,” the agreement stated the following pertinent terms:
 

 “[T]he parties hereto, for and in consideration of the mutual covenants made herein and the mutual benefits to be derived therefrom, hereby
 
 agree
 
 as follows:
 

 “... [A]ny and all property, whether real, personal, or mixed, brought into the marriage
 
 shall be restored
 
 to its original owner in the event the marriage is legally dissolved.
 

 “... [I]n the event of a marital dissolution, [the husband]
 
 shall pay
 
 [the wife] a sum equivalent to one-half (1/2) of the value of any and all assets, financial or otherwise, acquired by the parties after the date of the marriage, or the sum of $5,000.00, whichever is greater.
 

 “...
 
 [T]he mutual covenants
 
 stated herein are good, sufficient, and
 
 binding consideration.
 

 “...
 
 [T]his agreement
 
 may be introduced,
 
 without objection by either party,
 
 as evidence
 
 in any proceeding instituted to effect a legal dissolution of the marriage of the parties, and
 
 as such may be considered
 
 by any Court, Judge, or Judicial Officer
 
 for the purposes of property settlement, and for any claim of alimony or other spousal support.”
 

 (Emphasis added.)
 

 After entering into the antenuptial agreement containing those terms, the parties married in March 1993. They separated in March 2006, after which the husband filed a complaint in the Etowah Cir
 
 *654
 
 cuit Court seeking, among other things, a divorce from the wife on the ground of incompatibility and an equitable allocation of the marital property and indebtedness. The wife filed an answer and a counterclaim for a divorce on the ground of incompatibility, although she averred that the husband should be made responsible for all the marital debts. The husband subsequently amended his complaint to allege that the wife had committed adultery; the wife denied that allegation and amended her counterclaim to request enforcement of the terms of the parties’ antenuptial agreement.
 

 After an ore tenus proceeding, at which evidence was adduced tending to show, among other things, that the wife had committed adultery during the parties’ marriage, the trial court entered a judgment containing property-division provisions that were not consistent with those set forth in the antenuptial agreement. In its judgment, the trial court initially determined that the antenuptial agreement was voluntarily entered into by both the husband and the wife for good and valuable consideration and that it was fair, just, and reasonable from the husband’s point of view so as to be valid under general principles governing antenuptial agreements (for which, see
 
 Ex parte Williams,
 
 617 So.2d 1032, 1035 (Ala.1992), and
 
 Barnhill v. Barnhill,
 
 386 So.2d 749, 751 (Ala.Civ.App.1980)). The trial court also rejected the proposition that the wife’s adultery had vitiated the agreement, noting that “a party’s infidelities were not made grounds for recision or novation of the antenuptial agreement executed by the parties.” However, the trial court nonetheless declined to specifically enforce the provisions in the agreement in light of the “may be considered” language included in the agreement, which prompted the trial court to label the agreement as “suggestive only” and “non binding.” The trial court instead fashioned a property division under which the wife was awarded only sole possession of the marital home pending its sale, an equal share of the net proceeds derived from the sale of that home, and any motor vehicles in her possession; the wife was also awarded periodic monthly alimony in the amount of $1,000 and $2,000 as an attorney fee.
 

 The wife, following the denial of her postjudgment motion, has appealed to this court, asserting that the trial court erred in failing to enforce the provisions of the antenuptial agreement and, in the alternative, that the trial court acted outside its discretion in fashioning the alimony and property awards. Because we conclude that the wife’s first issue is dispositive of the appeal, we need not consider the wife’s alternative arguments impugning the equity of the trial court’s judgment as to the alimony and property awarded to the wife.
 

 As we noted in
 
 Laney v. Laney,
 
 833 So.2d 644 (Ala.Civ.App.2002), “antenuptial agreements are valid and enforceable under Alabama law.” 833 So.2d at 644 n. 2. Moreover, we held in both
 
 McGiffert v. McGiffert,
 
 627 So.2d 972, 977 (Ala.Civ.App.1993), and in
 
 Brown v. Brown,
 
 [Ms. 2050748, July 27, 2007] - So.3d -, - (Ala.Civ.App.2007), that trial courts may not dispose of property addressed in an antenuptial agreement in a manner that is inconsistent with that agreement. As the trial court correctly concluded, that the wife may have engaged in adultery does not, as the husband suggests in his brief to this court, render the agreement void or constitute a defense to enforcement of the agreement. The Ohio Supreme Court has aptly noted:
 

 “[PJarties ... who enter into [antenup-tial agreements] specifically provide for a possible ‘parting of the twain’ by way of divorce or separation. It would seem
 
 *655
 
 that some misconduct was contemplated at that time. If there would be no basic circumstance present which could occasion a separation or divorce of the parties, how could the provisions in the contemplated contract ever be meaningful as to either party? Any other view taken of such agreements would undermine and render inane the basic purpose of such agreements. If the parties had intended that the subsequent marital misconduct would extinguish the mutual promises in the agreement, either voiding the provisions or permitting only the one not at fault to enforce such provisions, the parties could very well have made this clear within the terms of the agreement.
 

 “As to this issue, we conclude the better view to be, and so hold, that antenuptial agreements providing for division of property and containing provisions for sustenance alimony, if otherwise found to be valid, are not abrogated as to either party for marital misconduct arising after the marriage.”
 

 Gross v. Gross,
 
 11 Ohio St.3d 99, 107-08, 464 N.E.2d 500, 508 (1984);
 
 accord Maloy v. Maloy,
 
 362 So.2d 484, 485 (Fla.Dist.Ct.App.1978).
 

 In
 
 Stacey v. Saunders,
 
 437 So.2d 1230 (Ala.1983), a case that involved the proper interpretation of an antenuptial agreement (as this case does), the Alabama Supreme Court noted and applied two pertinent principles of law that similarly govern our analysis here:
 

 (1) A written agreement is “‘unambiguous’ ” and is due to be enforced (if the agreement is otherwise enforceable) by the courts if the parties’ intent “ ‘can be fairly and reasonably gleaned from the four corners of the document,’ ” 437 So.2d at 1234 (quoting
 
 Schmidt v. Ladner Constr. Co.,
 
 370 So.2d 970, 972 (Ala.1979)); and
 

 (2) In discerning that intent, the courts “ ‘must avoid taking a single provision or sentence and attaching to it greater significance than is intended,’ ” 437 So.2d at 1234 n. 5 (quoting
 
 Southern Guar. Ins. Co. v. Wales,
 
 283 Ala. 493, 496, 218 So.2d 822, 825 (1969)).
 

 The husband, echoing the trial court’s conclusion and relying upon the “may be considered” provision in the agreement, argues on appeal that “[i]t is obvious that the prenuptial agreement signed by the parties was not binding.” However, both the husband’s argument and the trial court’s conclusion suffer from the very error of which
 
 Stacey
 
 warns: viewing a single provision or sentence in isolation. Although the antenuptial agreement at issue certainly does empower the trial court to “consider” the agreement, it does so immediately after having made clear that the agreement may be introduced as evidence in a divorce proceeding by either the husband or the wife without objection
 
 “for the purposes of property settlement
 
 ” and
 
 “any claim of alimony
 
 or other spousal support” (emphasis added). That additional language tends to indicate more than an intent merely to render the agreement admissible in evidence; rather, that language evidences an intent that the terms of the agreement be
 
 dispositive
 
 of alimony and property-settlement matters. That interpretation derives further support from a review of two of the preceding paragraphs in the agreement, in which the parties recite not only that mutual covenants have been made between them and that certain events “shall” occur in the event of a divorce, but also that those mutual covenants are
 
 “binding
 
 consideration” (emphasis added).
 

 Taking the agreement as a whole, as our Supreme Court has instructed we must,
 
 *656
 
 we conclude that the intent of the parties, as a matter of law, was that their agreement would be “considered” and judicially enforced for precisely what it was: a binding antenuptial agreement that would take immediate effect and would govern the parties’ subsequent legal relationship upon the filing of a divorce action. The trial court erred in failing to give effect to that intent, and its judgment is therefore due to be reversed. The cause is remanded so that the trial court may enter a judgment consistent with the substantive provisions of the parties’ antenuptial agreement.
 

 The wife’s request for an award of an attorney fee on appeal is granted in the amount of $2,000.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.