[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1063 
This is a divorce case. The husband appealed.
The parties were divorced on no-fault grounds, yet there was adequate evidence of their marital discord and strife to authorize the trial court to look to fault in awarding alimony and in the division of the property of the parties. Miller v.Miller, 361 So.2d 577 (Ala.Civ.App. 1978). The parties are fully aware of the two main frictional areas which contributed to the breakdown of the marriage, and no just reason exists for rubbing salt into their open wounds by a rehash herein of the testimony in that regard.
In his brief, the husband correctly states the review rules largely governing this appeal as follows:
 Husband recognizes full well the hill to be climbed on this appeal as the long standing rule of presumption in favor of the correctness of the trial court's decree in cases where the evidence is ore tenus. Frazier v. Frazier, 273 Ala. 53, 134 So.2d 205
(1961). However, a prerequisite for the presumption is credible evidence supporting the decree. Whitt v. McConnell, Ala., 360 So.2d 336 (1978).
 The divorce cases are legion wherein this Court has held that awards of alimony, child support and property lie within the sound discretion of the trial court and will not be disturbed upon appeal except for palpable abuse of that discretion. Williams v. Williams, Ala.Civ.App., 389 So.2d 141 (1980); Kitchin v. Kitchin, Ala.Civ.App., 370 So.2d 1031 (1979).
 This Court has stated time after time that each divorce case is decided on its own facts. Williams v. Williams, supra. The reading of innumerable such cases leads to the inescapable conclusion that this Court reverses only when it deems the actions of the trial court to be unfair or unjust in light of the peculiar facts.
 Custody
The wife, in her complaint, sought custody of the three minor children, aged sixteen, thirteen and eleven. No similar request was filed by the husband. The evidence is sparse which directly deals with custody, which is understandable since no one connected with the trial contested the right of the mother to custody. There is not a whisper of evidence that she is an unfit mother in any respect. The husband's evidence and his attorney's closing argument to the judge both anticipated and assumed that custody of the children would be granted to their mother. While the evidence should not be utilized in law school as a model to be followed in cases where child custody is actually contested, when the testimony is considered as a whole, it is adequate to uphold this particular judgment.
 Support
By various paragraphs of the judgment, the husband was ordered to pay $500 per month initially as child support, with payments to increase to $800 per month in the *Page 1064 
event the husband's federal personal income tax return shows a gross income in excess of $35,000 for any one year, and with a further increase to $1,000 per month if such gross income exceeds $40,000 for any given year. The child support payments must be paid until the last child reaches majority or otherwise becomes self-supporting. The financing of private schooling of the children will be borne by the husband. The wife was required to continue to carry hospitalization insurance on the children and to assume and pay their dental and drug expenses, but "[T]he husband shall be responsible for the medical expenses for the minor children. If the health insurance carried by the wife includes a major medical rider, the husband shall be allowed to file for reimbursement for the portions covered that he has expended." The husband was directed to use a certain debenture to aid the children in defraying their expenses to college.
The husband has no quarrel with the award of $500 per month for the support of his children. He contends that reductions should have been authorized as he becomes no longer legally responsible for their support when they respectively become of age, and that the provision for increases in the amount of support upon his income reaching certain levels constitutes an abuse of discretion. We disagree.
The amount of child support is determined by the needs of the child or children and the ability of the parent to pay. Pruettv. Pruett, 333 So.2d 580 (Ala.Civ.App. 1976). After the oldest or middle child reaches majority, if the father's payments are then excessive, the amount to be paid may be altered, for this would constitute a change in circumstances.
The sliding scale of support payments is justified by disputed evidence that his annual income should increase to, or exceed, the range of from $35,000 to $40,000. Should his income exceed the required total for one year so as to automatically authorize an increase under the judgment, and if his gross income decreases in a subsequent year to the extent that it does not then total the necessary amount, we again suggest that proper pleadings and hearings in the trial court seeking a reduction in amount or modification of the original judgment would be appropriate for due consideration. No judgment in a case of this nature can provide a present answer for every possible future problem.
We construe "gross income" as used in the judgment to mean "total income" as designated on federal 1040 income tax forms, which is, in substance, all income from whatever source derived.
The children have always attended private schools. However, the oldest child has presently elected to attend a public high school. Their father, in his testimony, expressed a desire that they continue to go to private schools. He should not now be heard to complain that he is required to pay for such schooling.
Any ambiguity as to medical costs may properly be raised by a motion for clarification when a dispute emerges. However, it is relatively clear that the trial court means that the husband be only responsible for those medical expenses, other than dental and drug expenses, not covered by the insurance policy required to be provided by the wife.
Since the husband testified that he had purchased the debenture for the children's educational benefit, and since he represented to the court that it was agreeable with him for the judgment to indicate such intent, he has no legal grumble against the action of the court regarding the debenture, which provision was in accordance with his expressed desires.
As to all of the support provisions in the judgment, there was no abuse of discretion by the trial court, and the evidence upholds it.
 Alimony
The judgment assessed the wife's periodic alimony to be paid until her death or remarriage at $300 per month, with the amount thereof to be increased to $400 per month when he ceases to make child support payments as long as he is then contributing *Page 1065 
at least one-half of the college and living expenses of the children during their college careers, and it further increases alimony to $500 per month at such time as such college and related living expenses are no longer being paid.
They have been married for twenty years. At the time of the trial, the wife was forty-one years of age and the husband was forty-three. They were a family of comfortable economic means. For example, the husband wore custom-made shirts, took flying lessons, hired the yard work done, traveled on one occasion to Las Vegas and to London, always belonged to a country club and drove a 1979 Cadillac.
The wife's income as a public school teacher increased from $3,000 in 1975 to over $13,000 in 1980. The husband had an income of $31,000 in 1975 and of $28,000 in 1979, but there was evidence before the trial court indicating some credible possibility of a current increase to $35,000 or $40,000 per year. The family's income was contributed to by both parties. The wife supported them by teaching when the husband was in attendance at the last three years of optometry school. She was employed throughout the marriage except for the times when she was pregnant or there were young children in the home. Her income was utilized to benefit the family. Both parties estimated their respective monthly expenditures to exceed $1,600 for each. As to the home, which will be subsequently discussed, the wife must, under the terms of the judgment, defray the mortgage payments of $232 per month, and the insurance and ad valorem taxes thereon.
Admittedly, the record reflects a marriage afflicted with strife, and, under the evidence, the trial court could have readily placed the major fault for the marriage breakdown upon the husband. We find no abuse of discretion in either the initial amount or in the duration of alimony. Roberts v.Roberts, 357 So.2d 150 (Ala.Civ.App. 1977), cert. quashed,357 So.2d 154 (Ala. 1978). However, those provisions for alimony after he ceases to make child support payments are so clearly connected to the husband's contributions to the college education of adult children as to render that portion of the judgment erroneous. The husband is required thereby to pay more alimony if he does not provide one-half of the support of the children while they are adult college students. The judgment in that regard attempts to do indirectly what it cannot do directly — order support for adult children. Godec v. Godec,346 So.2d 459 (Ala.Civ.App. 1977). This constitutes reversible error and we remand this aspect of the case for a determination by the trial court as to the amount of alimony to be paid by the husband to the wife upon the cessation of his child support obligations under the judgment.
 Income Tax Returns
Each year that he pays child support, the husband is required to provide the wife with copies of his federal income tax return within one week after its filing but no later than May 15.
The amount of child support is largely dependent upon gross income as reflected by his federal tax returns. It is, therefore, reasonable that he furnish such returns to the wife without forcing her to institute proceedings each year to discover whether the children are entitled to an automatic increase in child support. If he has a legitimate reason for a delay in filing his tax return, he may seek relief from the trial court by appropriate petition or motion.
 Division of Property
The husband has no dispute with the trial court's division of property except that he contends that he should be awarded all of the certificates of deposit and that the circuit court should have ordered the home to be sold at some point of time.
The trial court deferred a division of the certificates of deposit pending the furnishing by the parties of accurate information pertaining thereto. Since the record is silent as to how the C.D.'s were or shall be divided, we have no means of ascertaining whether there has been, or will be, a palpable abuse of discretion in that regard. *Page 1066 
The provisions of the judgment with relation to the family home were as follows:
 19. That the marital residence at 3031 Old Farm Road shall remain in the joint names of the parties. The wife shall have the use and occupancy of the same. The wife shall make all mortgage and tax payments and keep the home adequately insured. In the event the wife should ever elect to sell the home, the home shall be appraised, the costs of same to be included in the costs of closing and the home listed for sale with a qualified real estate broker.
 The home shall not be sold for less than 90% of the appraised value.
 The net proceeds of the sale shall be divided as follows: The husband shall receive one-third of the total net proceeds or $38,000.00 whichever is greater. The wife shall receive the balance of the net proceeds, after the husband has been paid. The home shall be sold in the event of the wife's remarriage upon the following conditions:
 A. In the event the wife remarries during the children's minority or while any of the children are in college, this provision will not take effect until after the expiration of twelve months after the children reach majority or finish college whichever is applicable.
 B. In the event provision A above is not applicable, the wife will have eight months after her marriage to list the home for sale.
 The wife at all times shall have the right to purchase the husband's equity. His equity would be one-third of the net proceeds after deducting the closing costs and appraisal fees or $38,000 whichever is greater.
Unless prematurely paid, the monthly mortgage payments by the wife will continue until 1999, but, if the house is sold before that date, the entire mortgage balance would then be deducted from the wife's share. The husband valued the home at between $110,000 and $120,000. With the husband's income potential, he will probably have the opportunity to purchase a comparably comfortable house; however, without a fortuitous remarriage on her behalf, that privilege would probably be denied to the wife under her income as a teacher.
The award to the wife of the home's use and occupation with the sale rights as provided by the judgment does not constitute abuse of judicial discretion, but, to the contrary, is very equitable under all of the circumstances of the case. However, the quoted provisions of Paragraph 19A of the judgment, which grant to the wife the right to remain in the home after remarriage while any of the children are in college and which makes one of the alternative effective dates twelve months after the children finish college, are subject to the same criticism previously directed to the later increased alimony. This also authorizes support for adult children and constitutes error. The trial court shall strike from Paragraph 19A of the judgment the words "or while any of the children are in college" and "or finish college whichever is applicable."
 Insurance
According to the husband's exhibit which lists his insurance coverage, he has a disability policy and four life policies with face amounts totaling almost $125,000. He was ordered,during the children's minority, to keep three of the life policies, with a collective face value of $80,000, in full force and effect for their benefit, naming the children as beneficiaries. Six weeks prior to the trial, the husband had borrowed in excess of $16,000 upon those three policies. The judgment prohibited further loans against those three particular policies and thus provided:
 When the last child reaches majority or otherwise becomes self supporting the husband may either continue to carry the insurance or transfer ownership of the policies to his wife. If transferred, the wife may either elect to keep the policies current or transfer ownership of the policies to the children. In the event the children do not elect to keep the policies current and the policies are allowed to *Page 1067 
lapse, the total cash values accumulated shall then be divided one-half to the wife and one-half to the three children.
We construe the judgment to mean that the husband is under a duty to name the children as beneficiaries only during their minority. Thereafter, when the last child reaches majority or otherwise becomes self-supporting, the husband has an election to make. He may, if he so desires, elect to continue to carry the insurance and thereby become the owner of the policies without any restriction imposed by the judgment. If he does not desire to continue the policies, his other elective alternative would be to transfer ownership to the wife, who, as then owner, would be responsible for the premium payments.
The children, who would then all be adults or self-supporting, would only participate in the total cash values after their father, of his own volition elected not to continue the policies, which action on his behalf would effectively waive any right which he might have therein. It would only be after he had elected not to continue to carry the insurance and after both the wife and the children had elected not to keep the policies current, and after the policies had thereby been allowed to lapse that the then net cash values would be so divided between the wife and three children.
We do not understand the judgment to provide for a guaranteed inheritance for adult children. The husband is provided with an election. He determines whether he continues the policies or transfers them. He has already realized over $16,000 in loan values from these policies, and only if he transfers them and the policies thereafter lapse would the wife and children participate in any loan value.
When a judgment is subject to two different reasonable interpretations, one lawful and another invalid, we are required to give validity to the judgment in our construction thereof. This we have done. We affirm, for under the terms of the judgment, his legal obligation as to the three policies terminates when the children reach their majority, except for the duty of the election granted to him by the judgment.
 Attorney's Fees
The trial court awarded the wife $950 to be applied upon her attorneys' fees. At the time of the trial, the husband's attorney had earned total fees of $4,000 for his professional services in the case. The wife, over a period in excess of one year, had consulted with three members of her firm of attorneys. Cross-examination of the wife's trial counsel was declined when he gave his opinion to the court that $3,500 would be reasonable, at that time, for his firm's fee. The awarded fee certainly was not excessive and did not constitute an abuse of discretion. Williamson v. Williamson, 391 So.2d 115
(Ala.Civ.App. 1980).
 Conclusion
The judgment in this case was eight legal pages in length. It is thoughtfully detailed in precise language and judiciously disposed of serious and important matters in dispute between the parties. The trial court walked the second mile in a diligent effort to attempt to eliminate and prevent some further or additional personal trauma occasioned by future litigations between two apparently conscientious, sensitive and outstanding people.
With the number of issues to be decided, this case is a classic example as to why trial courts must have judicial discretion to exercise in the decision process in litigation of this nature. No two judges would have here reached identical judgments. At this point of time in our grasp of jurisprudence, there is no equitable nor fair means by which the law can provide a precise gauge whereby each issue in a divorce case would have to be determined in exactly the same manner and with identical results reached by every judge faced with the same facts. Any law that provided such consistent results would be, of necessity, arbitrary to extremes and unacceptable to the bench, bar and public as being totally unfair. Now, every case is different, and is so treated by the law, which, through the medium of judicial discretion, provides for tailormade *Page 1068 
judgments which are written and rendered to fit and meet the varied and infinite facts and needs arising from all conceivable domestic human frailties, disagreements and controversies.
This case is affirmed in all respects except as to the amount of alimony to be paid by the husband after his child support payments cease and as to the right of the wife to occupy the home after remarriage for twelve months after the children complete their college education. As to such two aspects only, the case is reversed and remanded to the trial court for correction and further determination in accordance with this decision.
The appellant shall pay to the appellee's attorneys of record the sum of $750 to be applied upon their fee for representing the appellee upon this appeal.
The foregoing opinion was prepared by retired circuit judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e), Code of Alabama (1975), and this opinion is hereby adopted as that of the court.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
BRADLEY and HOLMES, JJ., concur.
WRIGHT, P.J., concurs in part and dissents in part.