[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 483 
Stewart Gregory Springer ("the father") appeals from a judgment of the Jefferson Circuit Court in two postdivorce proceedings. Lauren Levinson Springer Damrich ("the mother") cross-appeals. As to both the appeal and the cross-appeal, we affirm in part, reverse in part, and remand.
 Chronological Summary of Pertinent Facts and Procedural History
On December 21, 1999, the Jefferson Circuit Court entered a judgment divorcing the parties. The divorce judgment incorporated a settlement agreement between the parties. The judgment awarded the mother custody of the parties' two minor children, a son and a daughter, and awarded visitation to the father as set forth below:
 "FIFTH: That the [father] shall have the right to visit with [the son], as follows until June 2000:
 "(a) Each Tuesday and Thursday from 5:00 p.m. until 7:00 p.m.[;]
 "(b) Each Saturday and Sunday from 10:00 a.m. to 5:00 p.m. The [mother] shall have the option of having one weekend a month or one Saturday or Sunday a month with the children;
 "(c) On Christmas Eve from 12:00 p.m. until 5:00 p.m. and on Christmas Day from 3:00 p.m. until 8:00 p.m. The [mother] shall have [the son] with her all other times on Christmas Eve and Christmas Day;
 "(d) At any other times as agreed upon by and between the parties.
"From June 2000 until [the son] reaches six (6) years of age (May 2002), the [father] shall have the following rights of visitation with the [son]:
 "(a) In June 2000 — the first weekend of the month on Saturday from *Page 484 
 5:00 p.m. until the following Sunday at 10:00 a.m.;
 "(b) In June 2000 — the third weekend of the month on Saturday from 2:00 p.m., until the following Sunday at 10:00 a.m.;
 "(c) In July 2000 — the first weekend of the month on Saturday from 12:00 p.m. noon until the following Sunday at 2:00 p.m.;
 "(d) In July 2000 — the third weekend of the month on Saturday from 12:00 p.m. noon until the following Sunday at 4:00 p.m.;
 "(e) In August 2000 and every month thereafter (until [the son] reaches 6 years of age), each first and third weekend of the month from Saturday from 12:00 p.m. noon until the following Sunday at 4:00 p.m.[;]
 "(f) On Christmas Eve from 12:00 p.m. until 5:00 p.m. and on Christmas Day from 3:00 p.m. until 8:00 p.m. The [mother] shall have the child with her all other times on Christmas Eve and Christmas Day.
"SIXTH: That the [father] shall have the right to visit with [the daughter], as follows until August 2000:
 "(a) Each Tuesday and Thursday from 5:00 p.m. until 7:00 p.m.[;]
 "(b) Each Saturday and Sunday from 10:00 a.m. to 5:00 p.m. The [mother] shall have the option of having one weekend a month or one Saturday or Sunday a month with the children;
 "(c) On Christmas Eve from 12:00 p.m. until 5:00 p.m. and on Christmas Day from 3:00 p.m. until 8:00 p.m. The [mother] shall have the [daughter] with her all other times on Christmas Eve and Christmas Day;
 "(d) At any other times as agreed upon by and between the parties.
"In August 2000 until such time as [the son] reaches six (6) years of age (May 2002), the [the father] shall have the following visitation rights with [the daughter]:
 "(a) In August 2000 — the first weekend of the month on Saturday from 5:00 p.m. until the following Sunday at 10:00 a.m.;
 "(b) In August 2000 — the third weekend of the month on Saturday from 2:00 p.m. until the following Sunday at 10:00 a.m.;
 "(c) In September 2000 — the first weekend of the month on Saturday from 12:00 p.m. noon until the following Sunday at 2:00 p.m.;
 "(d) In September 2000 — the third weekend of the month on Saturday from 12:00 p.m. noon until the following Sunday at 4:00 p.m.;
 "(e) In October 2000 and every month thereafter (until [the son] reaches age 6), each first and third weekend of the month from Saturday from 12:00 p.m. noon until the following Sunday at 4:00 p.m.[;]
 "(f) On Christmas Day from 3:00 p.m. until 2:00 p.m. the following day. The [mother] shall have the child with her all other times on Christmas Eve and Christmas Day;
 "(g) Each Tuesday and Thursday from 5:00 p.m. until 7:00 p.m. for three (3) weeks each month, but not to interfere with special holidays and birthdays, and A.E.A. (Spring Break) vacation periods the children are with the [mother]. This provision shall not interfere with reasonable school and organized activities nor with reasonable vacation periods of the [mother].
"SEVENTH: That in May 2002, the [father] shall have the following visitation rights with the minor children of the parties: *Page 485 
 "(a) First and third weekends of each month from 6:00 p.m. on Friday until the following Sunday at 6:00 p.m.;
 "(b) In even years, Christmas Day from 3:00 p.m. until 3:00 p.m. the following New Year's Day.
 "In odd years, Christmas Day from 3:00 p.m. until the following day at 6:00 p.m. (The [mother] shall have the children with her all other times on Christmas Eve and Christmas Day.);
 "(c) Two (2) — one week non consecutive periods during the summer (to be taken between June 15th and August 15th) to be selected by the [father] but upon written notice to the [mother] at least thirty (30) days in advance of such visitation;
 "(d) During the odd years, A.E.A. (Spring Break) vacation from 9:00 a.m. Saturday until the following Saturday at 6:00 p.m. (The [mother] shall have the children with her said period during the even years.);
 "(e) During the even years, Thanksgiving vacation from 6:00 p.m. on Wednesday until the following Sunday at 6:00 p.m. (The [mother] shall have the children with her during the [odd] years for Thanksgiving Day through the following Sunday.);
 "(f) Each Tuesday and Thursday from 5:00 p.m. until 7:00 p.m. for three (3) weeks each month, but not to interfere with special holidays and birthdays, and A.E.A. (Spring Break) vacation period the children are with the [mother]. However, this provision shall not interfere with reasonable school and organized activities nor with reasonable vacation periods of the [mother;]
 ". . . .
 "(h) At such other times as agreed upon by and between the parties."
The trial court ordered the father to pay the mother $1,000 monthly as rehabilitative periodic alimony for 36 months. The trial court also ordered the father to pay $1,000 monthly as child support until the rehabilitative-alimony period ended, at which time his child-support obligation would increase to $1,500 per month. The divorce judgment further provided:
 "In the event the [father] earns as gross income from any source over and above One Hundred Twenty Thousand Dollars ($120,000) per year, the [father] shall pay an additional amount of child support equal to fifteen percent (15%) of the gross amount of said income over and above One Hundred Twenty Thousand Dollars ($120,000) and up to a gross income of Two Hundred Fifty Thousand ($250,000) per year."
The judgment further stated that the father would provide to the mother copies of his 1099 and W-2 forms by January 31 of each year and a copy of his state and federal tax returns immediately upon their filing each year.
Beginning in December 2002, and over the course of the next four years, the parties continually filed motions with the trial court regarding the father's visitation. The mother also filed a petition alleging that the father had failed to pay additional child support pursuant to the divorce judgment. As a result of these various motions, the trial court entered a series of orders that: (1) suspended visitation; (2) ordered supervised visitation; (3) required family counseling; (4) appointed a guardian ad litem; (5) ordered psychological evaluation of the parties and the children; and/or (6) restricted the father's visitation. The trial court also found that the father owed additional child support for the years 2002 and 2003 in the amount of $32,104.35. Additionally, the court found both parties *Page 486 
to be in criminal contempt of its various orders.
After the trial court entered a February 3, 2006, order modifying the father's supervised-visitation schedule, the father informed the mother that he would no longer visit with the children. He took the children's personal property to the mother's home and did not visit with the children for approximately three months. The father testified that he was upset over the course of the litigation and thought it was best for him and the children that he not visit for a period of time.
However, the parties continued to litigate over visitation, child-rearing and counseling, child support, and contempt issues as well as attorney's fees. After a series of interlocutory orders, on May 8, 2007, the court entered a final judgment stating:
 "1. That all requests for relief by both parties are denied except:
 "(A.) That the requirement for supervised visitation is deleted. In so doing, the Court is merely deciding whether it is necessary for this longstanding supervisory provision to remain in place. While the Court remains concerned over certain visitation aspects, that differs from the circumstances which led another Court to impose those restrictions.
 "(B.) The Father shall have the following visitation rights:
 "(a) The first and third full weekends of each month from 9:00 a.m. on Saturday until 5:00 p.m. the following Sunday (The first weekend of a month beginning on the first Friday of each month.);
 "(b) Each Christmas day from 3:00 p.m. until 3:00 p.m. on the following New Year's Day;
 "(c) Two consecutive weeks during the summer (to be taken between one week after school is out and one week before school starts), to be selected by the Father but upon written notice to Mother at least thirty (30) days in advance of such visitation;
 "(d) During the odd years, A.E.A. (Spring Break) vacation from 9:00 a.m. Saturday until the following Saturday at 6:00 p.m.;
 "(e) During the even years, Thanksgiving vacation from 6:00 p.m. Wednesday until Sunday at 6:00 p.m.;
 "(f) Every other birthday of the children from 6:00 p.m. on said date until 8:00 a.m. of the following day, beginning with next birthday[;]
 "(g) Every Father's day from 9:00 a.m. until 6:00 p.m. of the same day[;]
 "(h) On the birthday of the Father from 3:00 p.m. on said date until 8:00 p.m. of the same day[;]
 "(i) At such other times as agreed upon between the parties[;]
 "(j) The children shall be with the Mother on her birthday and on Mother's Day. Each parent shall keep the other informed on a current basis as to the primary residence address and telephone number where the children reside or visit.
 "(C.) That in accord with this Court's Order of 3 February 2006, the Mother and Father shall meet in a timely and peaceable manner at the Starbuck's Coffee, 81 Church Street, Mt. Brook, Alabama for pick-up and return;
 "(D.) That the Father shall forthwith provide the Mother with the mandated information under the Final Judgment of Divorce for 2006 and shall provide such information on a timely, annual basis; *Page 487 
 "(E.) That the Father shall forthwith pay those sums due and owing for his portion of uninsured medical expenses ($1,085.06) and shall likewise pay those sums due and owing by prior Order of Court;
 "2. The Father shall pay to the Mother the sum of Thirteen Thousand Three Hundred Fifty ($13,350.00) and NO/100 Dollars for her use in paying her attorney of record. Said sum shall be paid directly to Mr. Terry M. Cromer. . . . This amount does not necessarily reflect the total value of services rendered but rather represents the appropriate contribution due from the Father towards those services.
 "3. That costs of Court are hereby taxed to the Father."
On June 4, 2007, the father filed his notice of appeal. Thereafter, the mother filed a timely postjudgment motion pursuant to Rule 59, Ala. R. Civ. P. On June 21, 2007, the father filed his response to the mother's rule 59 motion and a motion for sanctions and attorney's fees. The trial court denied the mother's postjudgment motion on June 22, 2007. The mother filed her cross-appeal on August 2, 2007.
 Discussion
On appeal, the father raises seven issues; however, he has failed to cite any authority as to three of those issues.See Rule 28, Ala. R.App. P.; Asam v.Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App. 1996) (authorizing appellate courts to decline to consider issues not supported by legal authority). Therefore, we consider only four issues: (1) whether the trial court erred in finding that the father owed additional child support and in calculating the amount of the additional child support; (2) whether the trial court exceeded its discretion by modifying the visitation schedule set forth in the divorce judgment; (3) whether the trial court erred in admitting certain of the children's medical records; and (4) whether the trial court exceeded its discretion in awarding the mother an attorney fee.
On cross-appeal, the mother argues that the trial court erred by failing to award her additional child support for the years of 2004 and 2005. She also argues that the trial court exceeded its discretion by failing to order the parties and the children to participate in ongoing psychotherapy.
 I. Calculation of Additional Child Support
The first issue raised by both the father and the mother is whether the trial court should have ordered the father to pay additional child support for the years 2002-2005. The trial court awarded the mother additional child support for the years 2002 and 2003 but declined to do so for the years 2004 and 2005. As noted above, the divorce judgment, which mirrored the parties' settlement agreement, provided:
 "In the event the [father] earns as gross income from any source over and above One Hundred Twenty Thousand Dollars ($120,000) per year, the [father] shall pay an additional amount of child support equal to fifteen percent (15%) of the gross amount of said income over and above One Hundred Twenty Thousand Dollars ($120,000) and up to a gross income of Two Hundred Fifty Thousand ($250,000) per year."
Immediately subsequent to the above-stated provision, the divorce judgment requires the father to produce to the mother all of his W-2 forms and 1099 forms and all of his state and federal tax returns as proof of his gross income.
"[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract." Smith v.Smith, 568 So.2d 838, 839 (Ala.Civ.App. 1990). *Page 488 
 "A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. Sartin v. Sartin, 678 So.2d 1181
(Ala.Civ.App. 1996). `The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.' Id.
at 1183. Whether an agreement is ambiguous is a question of law for the trial court. Wimpee v. Wimpee, 641 So.2d 287 (Ala.Civ.App. 1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written. Jones v. Jones, 722 So.2d 768 (Ala.Civ.App. 1998). An ambiguity exists if the agreement is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala.Civ.App. 1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. Id."
R.G. v. G.G., 771 So.2d 490, 494 (Ala.Civ.App. 2000).See also Van Allen v. Van Allen, 812 So.2d 1276, 1277
(Ala.Civ.App. 2001); Ex parte Littlepage,796 So.2d 298, 301 (Ala. 2001); Jardine v. Jardine,918 So.2d 127, 131 (Ala.Civ.App. 2005); and Meyer v. Meyer,952 So.2d 384 (Ala.Civ.App. 2006).
Neither the settlement agreement nor the divorce judgment contains a definition of "gross income." However, a divorce judgment indicating that child support will increase based on the escalation of the payor's gross income, as evidenced by individual tax forms and tax returns, indicates that the child support is tied to the gross income as stated in those tax documents. See generally Chernau v. Chernau,396 So.2d 1061 (Ala.Civ.App. 1981). The parties seem to agree on this general principle, but the mother asserts that the term "gross income" includes the gross receipts of the father's limited liability company as exhibited on Schedule C of his tax returns. The father maintains that the term "gross income" does not include gross receipts of the father's limited liability company; rather, he asserts, it includes only income he personally derived from the limited liability company after its deductions for expenses. We agree with the father.
The moneys coming into the limited liability company certainly form the source of the father's gross income, but he does not personally derive a monetary gain from the entirety of those proceeds. His individual gross income from that source consists solely of the wages, capital interest, and distributions representing his share of the profits of the limited liability company. See Ala. Code 1975, § 10-12-29. In other words, the father's gross income includes only the moneys the limited liability company pays the father after deducting its expenses.[1] As the father's experts opined, the "gross income" of the limited liability company is not synonymous with the father's "gross income," even if the father reports the gross receipts of the limited liability company on Schedule C of his tax returns.
The evidence shows that the father's "gross income," i.e., the "total income" reported on his individual income-tax returns, in 2002 was $85,054; in 2003, $78,298; in 2004, $107, 697; and in 2005, $124,037. The only year his gross income exceeded $120,000 was 2005, and then it exceeded that figure only by $4,037. Therefore, by the terms of the settlement agreement and the divorce judgment, the *Page 489 
mother could have recovered only $605.55 in additional child support from the father. Any judgment for an amount different than that is erroneous. We reverse the judgment insofar as it awards the mother $32,104.35 in back child support for the years 2002 and 2003. We also reverse the judgment insofar as it denies the mother any additional child support for the year 2005. On remand, the trial court is to award the mother the sum of $605.55 as additional child support for the year 2005.[2]
 II. Visitation
The father next argues that the trial court erred in modifying the visitation schedule set forth in the divorce judgment.
 "`The determination of proper visitation . . . is within the sound discretion of the trial court, and that court's determination should not be reversed by an appellate court absent a showing of an abuse of discretion.' Ex parte Bland, 796 So.2d [340,] 343 [(Ala. 2000)]. `The primary consideration in setting visitation rights is the best interest of the child. Each child visitation case must be decided on its own facts and circumstances.' DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App. 1998) (citation omitted)."
Williams v. Williams, 905 So.2d 820, 830
(Ala.Civ.App. 2004).
In this case, over the five-year span of the postdivorce litigation, the trial court received a vast amount of information regarding the visitation plan that served the best interests of the children. Based on its unique perspective, the court determined from the heavily conflicting evidence that its original visitation order should be modified. We note that the 2007 visitation schedule is not dramatically different from the schedule set forth in the divorce judgment. Based on the foregoing and on our limited standard of review on this issue, we cannot conclude that the trial court exceed its discretion in this regard.
 III. Admission of Medical Records
The only argument for which the father cites any authority with regard to whether the trial court erred by admitting certain of the children's medical records is that the records did not fall within the "business records" exception to the hearsay rule.See Rule 803(6), Ala. R. Evid. We note, however, that the father made no objection to the admission of the medical records at the trial. When a party "fail[s] to object at trial to properly preserve error . . .[,] those issues are not properly preserved or presented for appellate review."McAliley v. McAliley, 638 So.2d 10, 10
(Ala.Civ.App. 1994). Accordingly, we cannot conclude that the trial court erred as to this issue.
 IV. Award of an Attorney Fee "Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928
(Ala.Civ.App. 1994). `Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience *Page 490 
as to the value of the services performed by the attorney.' Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App. 1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294
(Ala.Civ.App. 1986)."
Glover v. Glover, 678 So.2d 174, 176
(Ala.Civ.App. 1996).
In the present case, the father is self-employed as an attorney; he earned a total of $124,037 in the year 2005. The mother, however, works only five hours a week teaching yoga and pilates at the Mountain Brook Club and the Birmingham Club. Further, although the trial court had before it evidence of wrongdoing on the part of each of the parties, the trial court noted that it believed that the father was "largely to blame." That finding is supported by the record. Finally, the trial court made it clear that it only awarded attorney's fees that it had attributed to the father's actions. Accordingly, we cannot conclude that the trial court exceeded its discretion on this issue.
 V. Psychotherapy
The mother argues that the trial court erred by failing to require the parties to undergo counseling. "The issue[] of . . . counseling of a minor child [is] within the sound discretion of the trial court, and the court's determination will not be reversed in the absence of an abuse of that discretion."Hoplamazian v. Hoplamazian, 740 So.2d 1100, 1104
(Ala.Civ.App. 1999). It is axiomatic that the mother may choose to undergo counseling herself and may choose to seek counseling for the children if she deems it necessary. As to the father, there was no testimony indicating that the father suffers from any mental disease that affects the children. Further, the trial court stated that it had "never heard [of] so many therapists be[ing] involved in . . . four people's lives." The trial court also stated that it believed that the parties had employed so many therapists and had spent so much on legal fees "really for the purpose of one-upmanship with each other or destroying each other." Based on the foregoing, we cannot conclude that the trial court exceeded its discretion in failing to order the parties to attend counseling.
 Conclusion
Based on the foregoing, as to the father's appeal, we reverse the trial court's award of additional child support for the years 2002 and 2003. We affirm the trial court's judgment with regard to all the other issues raised by the father. As to the mother's cross-appeal, we reverse the judgment of the trial court insofar as it failed to award additional child support for the year 2005, and we remand this cause for the trial court to award the mother $605.55 as additional child support for the year 2005. We affirm the trial court's judgment with regard to all other issues raised by mother.
The mother's request for the award of an attorney fee on appeal is denied.
APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] Although the Child Support Guidelines found in Rule 32, Ala. R. Jud. Admin., do not govern the determination of this issue, we note that Rule 32(B)(3)(a) states: "For income from self-employment, rent, royalties, proprietorship of business, or joint ownership of a partnership or closely held corporation, `gross income' means gross receipts minus ordinary and necessary expenses required to produce such income . . . "
[2] The father also argues that the trial court erred by failing to comply with Rule 32(E), Ala. R. Jud. Admin.; however, we agree with the mother that Rule 32(E), which requires the filing of standardized Child Support Guidelines forms and income statements, applies only in an "action to establish or modify child support obligations," not in an action like this one in which one party is simply seeking to enforce an already existing child-support obligation. *Page 491