3 So.3d 894 (2008)
K.D.H.
v.
T.L.H. III.
2060827.
Court of Civil Appeals of Alabama.
August 15, 2008.
*895 Susan G. James of Susan G. James & Associates, Montgomery, for appellant.
*896 John Olszewski and Floyd Minor of Minor & Olszewski, L.L.C., Montgomery, for appellee.
MOORE, Judge.
In this appeal, K.D.H., the mother, challenges the custody, visitation, child-support, and attorney-fee provisions of a judgment divorcing her from T.L.H. III, the father. We affirm in part, reverse in part, and remand.

Background
In March 2006, the father filed a complaint seeking a divorce from the mother on the ground of incompatibility. He asserted that they had married in 1998; that they had three children, born on September 22, 1999, March 11, 2001, and April 10, 2003; and that, at the time he filed his complaint, the mother was pregnant with another man's child. He requested that a guardian ad litem be appointed to represent the unborn child. He sought custody of the parties' children, child support, and a division of all the parties' real and personal property. The mother answered the complaint and counterclaimed for a divorce. She sought sole custody of the parties' children.
The court appointed a guardian ad litem for the unborn child; the trial court also appointed a guardian ad litem for the parties' three children. The parties were ordered to mediate, but they did not reach a resolution during that mediation. Trial commenced on August 18, 2006. On the third day of the trial, the parties announced that they had reached a settlement. The parties' counsel read the terms of that agreement into the record, and the parties affirmed that the terms were, in fact, their agreement. The guardians ad litem approved the terms of the settlement. The trial court instructed the parties to file the settlement papers with the court within 30 days. The trial court scheduled a compliance review hearing for November 2, 2006.
At the compliance review hearing, the mother informed the court that she had discharged her previous counsel and that she did not agree with the terms of the settlement agreement. She made an oral motion to set aside the settlement agreement and to proceed with the trial. The trial court granted that motion, and the trial court set the trial to continue on November 13, 2006. The trial proceeded on November 13 and 14, 2006.
The evidence contained in the record reveals the following: At the time of the trial, the father was employed as an associate minister in a Methodist church located in Elmore County. During the marriage, the father worked primarily with the youth program at the church. The mother was, for the majority of the marriage, a stay-at-home mother. However, she also worked at the church with the youth on a volunteer basis and helped out at the church on an "as-needed" basis. At one point, she worked a part-time job to earn money for the family's church-building fund pledge.
The father called numerous witnesses who worked at the church or who attended the church, all of whom testified that the father should receive custody of the three children born to the mother and father because he was the more stable and settled parent of the two. The mother also called as witnesses a former member of the church, the pastor of her new church, her new pastor's wife, and various friends who all testified that she was a loving mother, that she was the more patient and devoted parent, and that she should receive custody of the parties' children.
The mother admitted that, in December 2005, during her marriage to the father, she had had sexual intercourse with A.G., a man involved in the church. She testified that they were physically intimate *897 only once; A.G.'s testimony confirmed that fact. The mother became pregnant as a result of the one-night encounter. The mother admitted that when she learned she was pregnant, she initially told the father and the church that he was the father of the child, even though the father had undergone a vasectomy years earlier. Within two weeks she revealed the truth. The mother carried the pregnancy to term; she testified that terminating the pregnancy was never an option for her and that she had refused to place the child for adoption, as the father had urged her to do.
The guardian ad litem for the parties' three children filed a written recommendation with the trial court; he recommended that the mother and the father receive joint legal custody, that the father receive primary physical custody, but that the mother receive more than standard visitation. He noted that the mother was currently unemployed, and, for that reason, he made no recommendation as to the issue of child support.
On February 16, 2007, the trial court entered a final judgment, awarding the father primary custody of the parties' three children; reserving the issue of paternity over the fourth child born during the parties' marriage ("the infant");[1] awarding the mother visitation with the children during alternating weeks from Thursday afternoons at 3:00 p.m. until Sunday afternoons at 3:00 p.m.; awarding the mother visitation during the other weeks from Thursday at 3:00 p.m. until the following morning; awarding the mother summer and holiday visitation with the children; ordering the mother to pay child support to the father in the amount of $363 per month; ordering the mother to pay $7,000 toward the father's attorney's fees; ordering the mother to pay $5,340 of the $8,640 fees incurred by the guardian ad litem appointed to represent the parties' three children; and ordering the mother to pay 100% of the $3,000 fees incurred by the guardian ad litem appointed to represent the infant.
On March 19, 2007, the mother filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial; she submitted an affidavit in support of that motion. On May 1, 2007, the trial court struck the mother's affidavit and denied her motion to alter, amend, or vacate or for a new trial. On June 8, 2007, the mother filed a notice of appeal.
In her principal brief on appeal, the mother asserts that the trial court exceeded its discretion in awarding the father custody of the parties' children, in denying the mother equal time with the children, in ordering the mother to pay child support to the father, and in ordering the mother to pay the guardian-ad-litem fees and the attorney fees of the father's counsel. In her reply brief, the mother asserts that she is not seeking sole custody but is seeking only "equal time as a parent who was determined equally as fit as her husband."

Custody
The mother argues that the trial court erred in finding that the mother was the "primary cause of the destruction of the marriage." "[T]he ore tenus rule affords a correct and necessary deference to the trial court's factual findings." J.C. v. State Dep't of Human Res., 986 So.2d 1172, 1185 (Ala.Civ.App.2007).

*898 "We first note that, when evidence is presented ore tenus, the trial court's ruling as to child custody carries a strong presumption of correctness. Wheeler v. Wheeler, 574 So.2d 832 (Ala. Civ.App.1990).
"`Because the trial judge is in a unique position to observe and to hear evidence, this court will not reverse on appeal unless the ruling is so unsupported by the evidence that it constitutes an abuse of discretion and, therefore, is clearly and palpably wrong.'"
McGiffert v. McGiffert, 627 So.2d 972, 973 (Ala.Civ.App.1993) (quoting Wheeler v. Wheeler, 574 So.2d 832, 832 (Ala.Civ.App. 1990)). Based on that standard of review, we cannot hold the trial court in error for determining that the mother was primarily at fault for the breakup of the parties' marriage. The record contains ample evidence indicating that the mother's adultery and resulting pregnancy led directly to the parties' divorce.
We note that the mother does not argue in her appellate brief that the trial court erred as a matter of law by failing to consider whether her adultery had a detrimental impact on the parties' children, which is required in order to consider that misconduct as a basis for a custody award, see Murphree v. Murphree, 579 So.2d 634, 636 (Ala.Civ.App.1991) ("Before custody may be denied on the basis of indiscreet behavior, there must be evidence showing that such misconduct is detrimental to the child."), and McGiffert, supra (accord). The mother's brief likewise fails to cite any authority to that effect.
"`[I]t is well settled that a failure to comply with the requirements of Rule 28(a)(10)[, Ala. R.App. P.,] requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.' State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005). We may do so because `"it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))."
State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So.2d 959, 962 (Ala.2007). Accordingly, we will not consider that issue.
Based on the foregoing, we find that the mother has not properly presented any grounds to reverse the custody provisions of the judgment.

Visitation
The mother next argues that, if this court affirms the trial court's award of primary physical custody to the father, the award of visitation to her was disparate and less liberal than the visitation previously agreed upon by the parties in their withdrawn settlement agreement. She points out that she and the father originally agreed that the mother would have 12 days of visitation with the parties' children each month but that, under the trial court's final judgment, she received only 8 days of visitation each month. She argues that the trial court's reduced visitation schedule is harmful to the children's emotional well-being and is contrary to the guardian ad litem's recommendation. She asserts that the trial court should not have decreased but should have increased her visitation with the children after hearing the mother's evidence because the trial court specifically found her to be a fit parent and because her indiscretion did not impair her ability to parent her children. She finally asserts that, even if the father has primary physical custody, visitation *899 should be "split down the middle" between the parents.[2]
"`[C]ases in Alabama have consistently held that the primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances.' Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App.1987) (citations omitted)."
Speakman v. Speakman, 627 So.2d 963, 965 (Ala.Civ.App.1993). "The determination of proper visitation ... is within the sound discretion of the trial court, and the court's determination should not be reversed by an appellate court absent a showing of an abuse of discretion." Ex parte Bland, 796 So.2d 340, 343 (Ala.2000).
The mother's legal arguments and citations on this issue are marginally sufficient. However, even assuming that she has sufficiently presented this issue on appeal, we find no reversible error. Although this court might have awarded more visitation had it been the trier of fact, this court does not substitute its resolution of disputed facts for the trial court's resolution of those facts. See, e.g., Speakman, 627 So.2d at 965 ("While this court might have reached a different determination, all factors considered, we will not substitute our judgment for that of the trial court."); and Alonzo v. Alonzo, 628 So.2d 749, 750 (Ala.Civ.App.1993) ("Our standard of reviews not what we might have done had we been the trial judge, but whether we find from the evidence that the trial judge was so in error as to constitute an abuse of his discretion.").
Additionally, in Ex parte Bland, supra, the Alabama Supreme Court recognized the following:
"The simple fact that the trial judge's final order reduced visitation of the noncustodial parent from six weeks in the summer to four weeks, and from every other weekend to one weekend a month, is not sufficient to find that the trial court abused its discretion. A pendente lite order is, by its nature, temporary. Further, the final order was entered after the trial court had received a substantial amount of evidence. Accordingly, we reverse that portion of the judgment of the Court of Civil Appeals reversing the trial court's visitation order."
Ex parte Bland, 796 So.2d at 343-44. In this case, the fact that the trial court's final judgment awarded the mother less visitation than the parties had initially agreed upon in their settlement agreement is not sufficient for this court to conclude that the trial court exceeded its discretion. The final judgment was entered after the trial court had received a substantial amount of ore tenus evidence. As part of that ore tenus evidence, the father requested that the children be available to attend church with him every Wednesday evening. Assuming the trial court believed that that was an appropriate schedule for the children, that evidence supported the trial court's visitation award to the mother from Thursday evenings until Sunday afternoons.
Moreover, even assuming that the guardian ad litem recommended that the mother receive more than standard visitation with the children, the trial court was not obligated to follow that recommendation. A guardian ad litem is an attorney entitled to argue his or her client's case to the court as is any other attorney, but he *900 or she is not delegated any special authority of the court. Moody v. Nagle, 811 So.2d 546, 548 (Ala.Civ.App.2001) (recognizing that the recommendation of a guardian ad litem has no binding effect on the trial court). The guardian ad litem's recommendation was simply that: a recommendation for the trial court's consideration.
Finally, we note that, on appeal, the mother argues that the visitation schedule adopted by the trial court did not afford her as much time with the children as the father. That argument does not articulate a discernible reason as to why the visitation schedule adopted by the trial court did not serve the best interests of the parties' children. Because the trial court's award of visitation was based upon ore tenus evidence and because that judgment is not so clearly erroneous as to prove that the trial court exceeded its discretion, the award of visitation in this case is due to be affirmed.

Child Support
The mother next challenges the award of child support to the father in the amount of $363 per month. She argues that an award of child support was unnecessary because the father had been the sole source of support for the parties' children during the marriage and he could continue to be their sole source of support. She argues that an exception to the application of the child-support guidelines was appropriate under the facts of this case. She also argues that the trial court should have used a downward deviation to calculate the amount of child support due during the months of June and July, when the mother would have expanded visitation with the children.
In response, the father points out that the mother fails to cite any authority in her appellant's brief for these arguments. He is correct; the mother fails to cite any legal authority for her position on the child-support issue until her reply brief. The father argues that, as a result, the trial court's child-support calculation should be affirmed. We agree. See Rule 28(a)(10), Ala. R.App. P.; State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So.2d at 962; Kyser v. Harrison, 908 So.2d 914 (Ala. 2005) (when appellants fail to cite any legal authority for their argument until the filing of their reply brief, the issue is not properly raised on appeal); and Rogers & Willard, Inc. v. Harwood, 999 So.2d 912, 923 (Ala.Civ.App.2007). We, therefore, affirm as to the trial court's award of child support.

Award of Attorney Fees and Guardian-ad-Litem Fees
The mother next appeals from the award of fees to the two guardians ad litem and the award of fees to the father's attorney. In its final judgment, the trial court ordered the mother to pay $5,340 of the $8,640 in fees to the guardian ad litem appointed to represent the parties' children; $3,000 of the $3,000 in fees incurred by the guardian ad litem appointed to represent the infant; and $7,000 of the legal fees incurred by the father's attorney at trial.
On appeal, the mother argues that, by imposing a total of $15,340 in fees upon her, the trial court punished her for asking that the settlement agreement be set aside so that she could continue with the trial. The mother argues that she has no funds with which to pay these fees and that she is, in essence, destitute; that both parties were at fault in this matter; that both parties should be responsible for their own legal fees; that the father requested that the guardians ad litem be appointed for the children and, therefore, he should be responsible for those fees; and that the trial court failed to consider the appropriate factors in ordering her to pay the fees *901 to the father's attorney and the guardians ad litem.
We first address the mother's arguments as to the guardian-ad-litem fees. We again note that the mother's arguments regarding this issue are lacking. The mother's initial brief on appeal fails to provide a single citation for her argument that the "entire fees for both [guardians ad litem] should be paid by the former husband since the requests were made by his counsel." This argument is therefore not properly presented on appeal, and, therefore, we have no basis on which to conclude that the trial court exceeded its discretion as to the guardian-ad-litem fees. See Rule 28(a)(10), Ala. R.App. P.; State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So.2d at 962; and Rogers & Willard, Inc. v. Harwood, 999 So.2d at 923.
The mother next argues that the trial court improperly ordered her to pay $7,000 of the father's legal fees. In support of that argument, the mother cites Rosser v. Rosser, 355 So.2d 717 (Ala.Civ. App.1977).
"`Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). "Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney." Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).'"
Springer v. Damrich, 993 So.2d 481, 489-90 (Ala.Civ.App.2008) (quoting Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App. 1996)).
The record indicates that the mother married at a young age and that, during the parties' nine-year marriage, she never held a full-time job. The evidence established that, at the time of the parties' separation, she had a limited earning capacity and that, at the time of the divorce, she had a newborn child and was unemployed. Using imputed income, the trial court ordered her to pay child support for the parties' three children. The trial court also required the mother to pay the majority of the guardian-ad-litem fees incurred in connection with the divorce proceeding. The divorce judgment ordered that the marital residence be listed with a real-estate agent and sold at fair-market price; the judgment also provided that the net proceeds from said sale be equally divided between the mother and the father and that the guardian-ad-litem fees owed by the mother be paid out of the mother's portion of said proceeds. We note, however, that the property appraised for $175,000 and that the amount owed on the first and second mortgages totaled $147,723.62. Because the judgment directed that the residence be listed with a real-estate agent, the parties will likely incur some closing costs and a realtor's commission associated with the sale of the residence. It appears that, after the mother's portion of the guardian-ad-litem fees are deducted from her one-half of any net proceeds from the sale, she will not receive a significant amount.
Conversely, the father was employed throughout the marriage; he has a greater earning capacity and a significantly higher income than the mother. The guardian-ad-litem *902 fees he was required to pay were significantly less than those imposed upon the mother. Additionally, the father will receive one-half of the net proceeds from the sale of the marital residence.
We recognize that the trial court was entitled to consider fault as a factor in awarding attorney fees. However, ability to pay is also a factor to be considered in ordering payment of attorney fees, even when wrongdoing has been established. See Rosser, 355 So.2d at 719-20 (in divorce and custody action, wife was admittedly guilty of adultery and trial court properly awarded custody of parties' minor children to husband; however, trial court properly ordered husband to pay wife's attorney fees because wife had no financial means to do so and husband's financial condition was better than wife's); Hanna v. Hanna, 688 So.2d 887 (Ala.Civ.App.1997) (even though husband was guilty of adultery, trial court did not err in failing to award wife attorney fees in light of the assets awarded to the parties and their incomes at time of the divorce); Davis v. Davis, 686 So.2d 1245 (Ala.Civ.App.1996) (award of attorney fees was appropriate because husband was in better financial condition than was wife); and Quillin v. Quillin, 652 So.2d 294 (Ala.Civ.App.1994) (husband earned more than twice as much as wife and was in better financial condition than was wife; thus, trial court properly awarded wife attorney fees in connection with divorce). See also Deidun v. Deidun, 362 S.C. 47, 606 S.E.2d 489 (2004) (factors to be considered in determining whether to award attorney fees include the parties' ability to pay the legal fees, their financial conditions, and the effect of the fee on the parties' standard of living); and Van Wieren v. Van Wieren, 858 N.E.2d 216 (Ind.Ct. App.2006) (in determining whether attorney fees should be awarded, the court may consider the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award).
Because the record establishes that the mother was unemployed, had limited financial resources, and had a limited earning capacity at the time of this trial because of her pregnancy, we conclude that the impact of the trial court's attorney-fee award on the mother would be substantial and farreaching.[3] We also note that the father's financial means were substantially higher than those of the mother. We, therefore, conclude that the trial court exceeded its discretion in ordering the mother to pay $7,000 of the father's attorney fees; we reverse that portion of the trial court's judgment. We remand this cause for the trial court to vacate that portion of its judgment.

Father's Request for Attorney Fees on Appeal
Finally, we address the father's request for an award of attorney fees on appeal. The award of attorney fees on appeal is within the authority and discretion of this court. See Ex parte Bland, 796 So.2d at 345 (citing Chancellor v. Chancellor, 52 Ala.App. 10, 288 So.2d 794 (1974)). The father's attorneys have submitted an affidavit attesting that they incurred fees and expenses in the amount of $12,819.79 in connection with preparing the appellee's brief. In light of the mother's limited income and the circumstances presented in this case, we decline to award any additional fees to the father on appeal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*903 THOMPSON, P.J., and THOMAS, J., concur.
BRYAN, J., concurs in part and dissents in part, with writing, which PITTMAN, J., joins.
BRYAN, Judge, concurring in part and dissenting in part.
I concur in the main opinion insofar as it affirms the trial court's judgment. I respectfully dissent insofar as the main opinion reverses the portion of the trial court's judgment ordering the mother to pay the father a $7,000 attorney fee.
As the main opinion acknowledges, the determination "`"[w]hether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed."'" 3 So.3d at 901 (quoting Springer v. Damrich, 993 So.2d 481, 489 (Ala.Civ.App.2008), quoting in turn Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App. 1996)). Indeed, I note that, in every case cited by the main opinion regarding the attorney-fee issue, this court affirmed the trial court's ruling on that issue.
The "`"[f]actors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney."'" Springer, 993 So.2d at 489-90 (quoting Glover, 678 So.2d at 176, quoting in turn Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993)). With regard to the conduct of the parties in the case now before us, the trial court made the following finding:
"[T]he primary cause of the destruction of the marriage lies not with both, but with one party. The misguided actions of the wife and her paramour along with her initial deception and ultimate decision concerning the pregnancy directly led to the dissolution of this marriage."
Thus, the mother's conduct in causing the breakdown of the marriage was a factor that supported the trial court's order that the mother pay the father a $7,000 attorney fee. Because the father was the prevailing party in the litigation, that factor also supported the trial court's order requiring the mother to pay the father a $7,000 attorney fee. Finally, the trial court implicitly found that the services of the father's attorney were valuable; consequently, that factor also supported the trial court's order requiring the mother to pay the father a $7,000 attorney fee.
In holding that the parties' financial circumstances warrant reversing the trial court's judgment insofar as it requires the mother to pay the father a $7,000 attorney fee, the main opinion, in effect, holds that that single factor trumps all three of the other factors. I cannot agree with that proposition. In my opinion, the three factors supporting the trial court's attorney-fee award, in the aggregate, outweigh the single factor that does not support that award. Accordingly, given the discretion afforded the trial court in awarding an attorney fee in a domestic-relations case and the factors supporting the trial court's award in this particular case, I would affirm the trial court's judgment insofar as it ordered the mother to pay the father a $7,000 attorney fee.
PITTMAN, J., concurs.
NOTES
[1] On March 27, 2007, after paternity testing, the Elmore Juvenile Court entered a consent judgment adjudicating A.G. to be the father of the infant. A.G. was ordered to pay $480 per month in child support to the mother. On April 27, 2007, the trial court entered a judgment in this case determining that T.L.H. was not the father of the infant despite the fact that the infant had been born during the parties' marriage.
[2] It appears that the mother may actually be seeking to share custody of the children with the father on an equal basis. However, her argument on this point is so vague and undeveloped that we cannot consider it. See White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042 (Ala.2008).
[3] We note that the trial court imputed income of $8.00 per hour to the mother. In order to earn sufficient income to pay the $7,000 fee award, the mother would have to work 875 hours and devote her entire gross income to payment of the fee award.